IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| TOWNES TELECOMMUNICATIONS, INC.; TOWNES TELECOMMUNICATIONS SERVICES CORP.; NORTHEAST FLORIDA TELEPHONE CO.; MOKAN DIAL, INC.; CHOCTAW TELEPHONE COMPANY;  FIRST NATIONAL BANK OF TOM BEAN; AND CIRCLE CC RANCH, INC. | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. _____ |
| vs. | ) ) | |
| NATIONAL TELECOMMUNICATIONS COOPERATIVE ASSOCIATION, AND NTCA RETIREMENT AND) SECURITY/SAVINGS PLAN TRUST COMMITTEE, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## DECLARATION OF MICHAEL L. JUNK
## IN SUPPORT OF NOTICE OF REMOVAL

I, MICHAEL L. JUNK, declare the following:

1.      I am over the age of 18, and I am otherwise fully competent to testify to the matters stated in this Declaration.

2.      I am Of Counsel at Groom Law Group, Chartered, in Washington, DC.   I represent Defendants, the National Telecommunications Cooperative Association ("NTCA") and the NTCA Retirement and Security/Savings Plan Trustee Committee ("Committee").

3.      I make this Declaration in support of Defendants' Notice of Removal.

1

4.     The NTCA Retirement and Security Program (the "Program") is a multiple-employer pension plan governed by the Employee Retirement Income Security Act of 1974, as amended.

5.     Defendant NTCA is the sponsor of the Program.

6.     Defendant Committee is the Program's administrator and named fiduciary.

7.     Plaintiffs commenced this declaratory judgment action against Defendants in the Arlington Circuit Court, Civil Division, Arlington, Virginia, which is captioned *Townes Telecommunications, Inc., et al. v. National Telecommunications Cooperative Association, et al.*, Case No. CL19-758 ("State Action").

8.     Attached as Exhibit A are true and correct copies of the process, pleadings, and orders filed in the State Action.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 12, 2019

Michael L. Junk

2

# EXHIBIT A

FILED by Arlington County Circuit Court
03/08/2019



CL19000758-00
DECL
REQ

**VIRGINIA:**

## IN THE CIRCUIT COURT OF ARLINGTON COUNTY

TOWNES TELECOMMUNICATIONS        *
INC., et al.                                           *
           Plaintiff,                    *
                                              *
v.                                                          *        CASE NO.: CL
                                              *
NATIONAL TELECOMMUNICATIONS    *
COOPERATIVE ASSOCIATION, et al.    *
                                              *
           Defendant.                  *

## REQUEST FOR PREPARATION OF SUMMONS

PLEASE TAKE NOTICE that Townes Telecommunications, Inc. et al, Plaintiff, through

counsel, is requesting summonses to be prepared for the following parties for private process

service:

    National Telecommunications Cooperative Association
    **To Be Served:** Registered Agent- Corporation Service Company,
    100 Shockoe Slip, 2nd Floor, Richmond, Virginia 23219

    NTCA Retirement and Security/Savings Plan Trustee Committee
    **To Be Served:** Shirley Bloomfield, CEO
    4121 Wilson Boulevard, Arlington, Virginia 22203

Dated: March 8, 2019                Respectfully submitted,
                                TOWNES TELECOMMUNICATIONS, INC., et al.

                        By: _____
                                      Counsel

James W. Hundley, VSB# 30723
Robert H. Cox, VSB# 33118
BrigliaHundley, P.C.
1921 Gallows Road, Suite 750
Tysons Corner, Virginia 22182
Telephone: (703) 883-0880
Facsimile: (703) 883-0899
jhundley@brigliahundley.com
rcox@brigliahundley.com

FILED by Arlington County Circuit Court
03/08/2019

CL19000758-00
DECL
DECL

COVER SHEET FOR FILING CIVIL ACTIONS

Case No. _____ (CLERK'S OFFICE USE ONLY)

COMMONWEALTH OF VIRGINIA

..................... Arlington County ..................... Circuit Court

Townes Telecommunications, Inc., et al. ............ v./In re: National Telecommunications Cooperative Assoc., et al.

PLAINTIFF(S)  DEFENDANT(S)

I, the undersigned [ ] plaintiff [ ] defendant [x] attorney for [x] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

**GENERAL CIVIL**

**Subsequent Actions**
[ ] Claim Impleading Third Party Defendant
    [ ] Monetary Damages
    [ ] No Monetary Damages
[ ] Counterclaim
    [ ] Monetary Damages
    [ ] No Monetary Damages
[ ] Cross Claim
[ ] Interpleader
[ ] Reinstatement (other than divorce or driving privileges)
[ ] Removal of Case to Federal Court

**Business & Contract**
[ ] Attachment
[ ] Confessed Judgment
[ ] Contract Action
[ ] Contract Specific Performance
[ ] Detinue
[ ] Garnishment

**Property**
[ ] Annexation
[ ] Condemnation
[ ] Ejectment
[ ] Encumber/Sell Real Estate
[ ] Enforce Vendor's Lien
[ ] Escheatment
[ ] Establish Boundaries
[ ] Landlord/Tenant
    [ ] Unlawful Detainer
[ ] Mechanics Lien
[ ] Partition
[ ] Quiet Title
[ ] Termination of Mineral Rights

**Tort**
[ ] Asbestos Litigation
[ ] Compromise Settlement
[ ] Intentional Tort
[ ] Medical Malpractice
[ ] Motor Vehicle Tort
[ ] Product Liability
[ ] Wrongful Death
[ ] Other General Tort Liability

**ADMINISTRATIVE LAW**
[ ] Appeal/Judicial Review of Decision of (select one)
    [ ] ABC Board
    [ ] Board of Zoning
    [ ] Compensation Board
    [ ] DMV License Suspension
    [ ] Employee Grievance Decision
    [ ] Employment Commission
    [ ] Local Government
    [ ] Marine Resources Commission
    [ ] School Board
    [ ] Voter Registration
    [ ] Other Administrative Appeal

**DOMESTIC/FAMILY**
[ ] Adoption
    [ ] Adoption – Foreign
[ ] Adult Protection
[ ] Annulment
    [ ] Annulment – Counterclaim/Responsive Pleading
[ ] Child Abuse and Neglect – Unfounded Complaint
[ ] Civil Contempt
[ ] Divorce (select one)
    [ ] Complaint – Contested*
    [ ] Complaint – Uncontested*
    [ ] Counterclaim/Responsive Pleading
    [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
[ ] Separate Maintenance
    [ ] Separate Maintenance Counterclaim

**WRITS**
[ ] Certiorari
[ ] Habeas Corpus
[ ] Mandamus
[ ] Prohibition
[ ] Quo Warranto

**PROBATE/WILLS AND TRUSTS**
[ ] Accounting
[ ] Aid and Guidance
[ ] Appointment (select one)
    [ ] Guardian/Conservator
    [ ] Standby Guardian/Conservator
    [ ] Custodian/Successor Custodian (UTMA)
[ ] Trust (select one)
    [ ] Impress/Declare
    [ ] Reformation
[ ] Will (select one)
    [ ] Construe
    [ ] Contested

**MISCELLANEOUS**
[ ] Appointment (select one)
    [ ] Church Trustee
    [ ] Conservator of Peace
    [ ] Marriage Celebrant
[ ] Bond Forfeiture Appeal
[x] Declaratory Judgment
[ ] Declare Death
[ ] Driving Privileges (select one)
    [ ] Reinstatement pursuant to § 46.2-427
    [ ] Restoration – Habitual Offender or 3rd Offense
[ ] Expungement
[ ] Firearms Rights – Restoration
[ ] Forfeiture of U.S. Currency
[ ] Freedom of Information
[ ] Injunction
[ ] Interdiction
[ ] Interrogatory
[ ] Judgment Lien-Bill to Enforce
[ ] Law Enforcement/Public Official Petition
[ ] Name Change
[ ] Referendum Elections
[ ] Sever Order
[ ] Taxes (select one)
    [ ] Correct Erroneous State/Local
    [ ] Delinquent
[ ] Vehicle Confiscation
[ ] Voting Rights – Restoration
[ ] Other (please specify)

[ ] Damages in the amount of $ ............ are claimed.

March 8, 2019
DATE

[ ] PLAINTIFF   [ ] DEFENDANT   [x] ATTORNEY FOR   [x] PLAINTIFF
    [ ] DEFENDANT

Robert H. Cox
PRINT NAME

1921 Gallows Road, Suite 750, Tyson's Corner, VA 22182
ADDRESS/TELEPHONE NUMBER OF SIGNATOR

703-883-0899

rcox@brigliahundley.com
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

FORM CC-1416 (MASTER) PAGE ONE 10/14

FILED by Arlington County Circuit Court
03/08/2019

CL15000758-00
DECL
DECL

## IN THE CIRCUIT COURT FOR ARLINGTON COUNTY, VIRGINIA



TOWNES TELECOMMUNICATIONS, INC.　*
120 E. 1st Street
Lewisville, Arkansas 71845　*

TOWNES TELECOMMUNICATIONS　*
SERVICES CORP.
130 N. 4th Street　*
Macclenny, Florida 32063

　*

NORTHEAST FLORIDA TELEPHONE CO.
130 N. 4th Street　*　　Case No. ___CL19-758___
Macclenny, Florida 32063

　*

MOKAN DIAL, INC.　*
112 S. Broadway Street
Louisburg, Kansas 66053　*

CHOCTAW TELEPHONE COMPANY　*
204 W. Main Street
Halltown, Missouri 65664　*

FIRST NATIONAL BANK OF TOM BEAN　*
109 S. Britton Street　*
Tom Bean, Texas 75489

　*

　　　　and　*

CIRCLE CC RANCH, INC.　*
6780 Collier Drive
Paris, Texas 75462　*

　　Plaintiffs,　*

　　　　v.　*

　*

NATIONAL TELECOMMUNICATIONS
COOPERATIVE ASSOCIATION　*
4121 Wilson Boulevard
Arlington, Virginia 22203　*

**SERVE:**　**Registered Agent**　*
　　　　**Corporation Service Company**
　　　　**100 Shockoe Slip, 2nd Floor**　*
　　　　**Richmond, Virginia 23219**

                                                 *

                                                 *

NTCA RETIREMENT AND SECURITY/  
SAVINGS PLAN TRUSTEE COMMITTEE    *  
4121 Wilson Boulevard  
Arlington, Virginia 22203                   *

**SERVE:  Shirley Bloomfield, CEO**      *  
           **4121 Wilson Boulevard**  
           **Arlington, Virginia 22203**

        Defendants.

## COMPLAINT

Plaintiffs Townes Telecommunications, Inc., Townes Telecommunications Services Corp., Northeast Florida Telephone Co., MoKan Dial, Inc., Choctaw Telephone Company; First National Bank of Tom Bean, and Circle CC Ranch, Inc. (collectively, "plaintiffs") bring this Complaint for declaratory judgment against defendants the National Telecommunications Cooperative Association ("NTCA") and the NTCA Retirement and Security/Savings Plan Trustee Committee ("NTCA Committee") (defendants NTCA and NTCA Committee are referred to collectively herein as "NTCA" or "defendants").

## INTRODUCTION

1.     Plaintiffs are employers which have contributed millions of dollars over many years to fund pensions for their respective employees.  Defendants are NTCA and its affiliate, subsidiary, or agent, the NTCA Committee.  Defendants, specifically the NTCA Committee, as trustee, hold, manage, and control for the benefit of plaintiffs' employees the pension funds plaintiffs have contributed.  Plaintiffs have advised NTCA, in multiple communications with both NTCA and its counsel, of plaintiffs' intent to exercise their right to withdraw from the NTCA plan(s).  There is no dispute that plaintiffs are entitled to withdraw from the NTCA

pension program and to have all the assets and liabilities attributable to plaintiffs' employees' current NTCA pension accounts transferred to a successor plan (or plans). While NTCA acknowledges, as it must, plaintiffs' right to withdraw from the NTCA pension plan(s), NTCA insists that, as a precondition of plaintiffs' withdrawing, NTCA has the "right" to impose on plaintiffs a substantial "withdrawal liability" charge. The claimed withdrawal liability charge is estimated to be approximately $10 million (and potentially more). Plaintiffs' firm position is that the withdrawal liability charge that NTCA claims the right to impose as a condition of withdrawal is unlawful, and that the contract provisions upon which NTCA relies as "authority" to impose the charge are invalid. NTCA vigorously disputes this position and claims the charge is lawfully imposed. Plaintiffs bring this action to resolve these sharply disputed legal questions between plaintiffs and defendants of the lawfulness of NTCA's claim that it is authorized to impose the withdrawal charge.

2.     NTCA has been explicit and, indeed, repeatedly unyielding, in insisting that it will impose a multi-million dollar withdrawal liability charge on the occasion of plaintiffs' withdrawing from the NTCA plan. Plaintiffs, in response, have been equally clear in insisting that NTCA is without legal authority to do what NTCA insists it has the right to do and that NTCA's planned action to impose this multi-million dollar charge is unlawful. This declaratory judgment action is the proper vehicle for determining the respective rights of the parties with respect to this matter.

3.     The NTCA Committee is the fiduciary trustee holding, managing, and controlling pension funds for the benefit of plaintiffs' employees, and as such is required to comply with all statutes and laws, including federal statutes. The actions that NTCA and the NTCA Committee propose to take with respect to imposing withdrawal liability as a condition of allowing plaintiffs

3

to withdraw from the NTCA plan violate the law, specifically the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

4. ` In the language of ERISA, the pension plan at issue here is a "multiple-employer plan," as it is a plan "maintained by two or more contributing sponsors [employers] ... under which all plan assets are available to pay benefits to all plan participants and beneficiaries." 29 C.F.R. § 4001.2.[1] Congress has refused to grant multiple-employer plans general authority to impose a withdrawal liability charge as a condition of an employer's withdrawing from a multiple-employer plan. Instead, Congress has carefully restricted the authority of multiple-employer plans to impose a withdrawal liability charge to two circumstances: (1) if the withdrawing employer is a "substantial employer," as defined by ERISA, 29 U.S.C. § 1301(a)(2); and (2) if the withdrawing employer made contributions to the plan within five years preceding termination of the plan. 29 U.S.C. §§ 1363, 1364. Neither of these limited circumstances is involved here.

5. NTCA has acknowledged in correspondence from its counsel that ERISA does not provide the NTCA plan with the authority to demand that plaintiffs pay a withdrawal fee. Instead, the NTCA Committee relies entirely on contractual provisions defendants inserted into the plan documents to impose the withdrawal liability. In doing so, the NTCA Committee ignores language in the same plan documents providing that the plan "shall be construed and enforced according to the laws of Virginia." In claiming the right to impose a withdrawal liability charge, NTCA violates settled Virginia law. Under Virginia law, a contract provision

---

[1] ERISA recognizes "single-employer plans" and "multi-employer plans," where "single-employer plans" are defined as every type of plan other than a "multi-employer plan," *see* 29 U.S.C. §§ 1002(41), 1301(a)(15). The NTCA plan is not a multi-employer plan as defined under ERISA, *see* 29 U.S.C. § 1002(37)(A); therefore, by operation of §§ 1002(41) and 1301(a)(15), the NTCA plan is a "single-employer plan," albeit a plan in which multiple (single) employers participate. Throughout this complaint, the NTCA plan(s) to which plaintiffs have contributed for the benefit of their employees is referred to as a "multiple-employer plan."

4

(here the plan provision purportedly authorizing the imposition of withdrawal liability) that violates a statute (here the imposition of withdrawal liability in violation of ERISA) is unenforceable. *See infra* Count One.

6.     Alternatively, and assuming, while expressly denying, that NTCA has any authority to impose withdrawal liability (which it does not), NTCA's stated method for calculating plaintiffs' withdrawal liability is unlawful. Here, too, NTCA proposes to act in violation of federal law (ERISA). In calculating any withdrawal liability, the NTCA Committee proposes to use an interest rate contrary to that permitted under ERISA (in circumstances, unlike the present case, where Congress has authorized a plan to assess withdrawal liability). Instead of acting in accordance with federal law (ERISA), NTCA and the NTCA Committee propose to use an arbitrary, unauthorized, and artificially low interest rate. Again, NTCA has no authority to do as it proposes to do. The NTCA Committee cannot act contrary to law and that is what it purports to have "authority" to do by using an interest rate other than one which conforms with ERISA, and any plan provisions or NTCA policies or practices to the contrary are unlawful, impermissible, and unenforceable. *See infra* Count Two.

7.     The NTCA Committee has designed and is implementing an unlawful scheme to discourage – effectively preclude – plaintiffs from exercising their right to withdraw from the NTCA plan. Plaintiffs have reached an impasse with NTCA.

8.     NTCA, in correspondence between the parties' respective counsel prior to the filing of this action, has taken the position that plaintiffs are required to withdraw their funds first, subject to the claimed withdrawal liability charge of millions of dollars, and only then seek a determination of whether NTCA is authorized to impose millions of dollars of withdrawal liability. To the contrary, the dispute between plaintiffs and NTCA is, in its present posture, ripe

and precisely the type of controversy appropriate for declaratory relief. *See* Va. Code § 8.01-184 (court "shall have the power to make binding adjudications of right"). Plaintiffs are not required to "leap" without first obtaining a determination of their rights, including the limitations on NTCA's legal authority. The legal dispute between plaintiffs is sharply and clearly defined: does NTCA have the authority it claims it has to impose on plaintiffs millions of dollars of withdrawal liability and, if so, to calculate that liability as it proposes to do?

9.      There is a genuine ripe justiciable controversy between the parties which can and should be resolved in this declaratory judgment action. The resolution of the issues in this case does not depend upon the amount of the claimed withdrawal liability (whether the final charge is $8 million versus $10 million, for example), but upon the legal questions of NTCA's asserted "right" to impose withdrawal liability in any amount (Count One *infra*) and, assuming, *arguendo*, it has any such "right," the lawfulness of NTCA's calculation methodology (Count Two *infra*). Accordingly, plaintiffs bring this action seeking binding declarations of the parties' respective rights and obligations.

## PARTIES

Plaintiffs

10.      Plaintiffs are all members of and pay dues to NTCA. Plaintiffs have made 100% of the contributions to NTCA plan(s) on behalf of their employees. Plaintiffs, not their employees, will be responsible to pay the withdrawal liability should this Court find that defendants' withdrawal charge is valid.

11.      Plaintiff Townes Telecommunications, Inc. is incorporated in Texas and headquartered at 120 E. 1st Street, Lewisville, Arkansas 71845, and provides, among other things, management and other services to rural telephone companies. Plaintiff Townes

6

Telecommunications, Inc. is a member of NTCA and its employees are participants in the NTCA pension plan(s).

12.     Plaintiff Townes Telecommunications Services Corp. is incorporated in Florida and headquartered at 130 N. 4th Street, Macclenny, Florida 32063, and provides management services to rural telephone companies. Plaintiff Townes Telecommunications Services Corp. is a member of NTCA and its employees are participants in the NTCA pension plan(s).

13.     Plaintiff Northeast Florida Telephone Co. is incorporated in Florida and headquartered at 130 N. 4th Street, Macclenny, Florida 32063, and provides residential and business telephone and internet services to its customers. Plaintiff Northeast Florida Telephone Co. is a member of NTCA and its employees are participants in the NTCA pension plan(s).

14.     Plaintiff MoKan Dial, Inc. is incorporated in Kansas and headquartered at 112 S. Broadway Street, Louisburg, Kansas 66053, and provides residential and business telephone and internet services to its customers. Plaintiff Mo-Kan Dial, Inc. is a member of NTCA and its employees are participants in the NTCA pension plan(s).

15.     Plaintiff Choctaw Telephone Company is incorporated in Missouri and headquartered at 204 W. Main Street, Halltown, Missouri 65664, and provides residential and business telephone and internet services to its customers. Plaintiff Chocktaw Telephone Company is a member of NTCA and its employees are participants in the NTCA pension plan(s).

16.     Plaintiff First National Bank of Tom Bean is incorporated in Texas and headquartered located at 109 S. Britton Street, Tom Bean, Texas 75489, where it provides residential and business banking services to its customers. Plaintiff First National Bank of Tom Bean is a member of NTCA and its employees are participants in the NTCA pension plan(s).

17.     Plaintiff Circle CC Ranch, Inc. is located at 6780 Collier Drive, Paris,

Texas 75462, and is engaged in ranching and in other services. Plaintiff Circle CC Ranch is a

member of NTCA and its employees are participants in the NTCA pension plan(s). Plaintiffs are

referred to collectively in this complaint as "plaintiffs."

Defendants

18.     Defendant National Telecommunications Cooperative Association ("NTCA") is

located at 4121 Wilson Boulevard, Arlington, Virginia 22203. NTCA is a trade association

which represents approximately 800 independent telecommunications companies operating in

rural areas in the United States. Among other functions, NTCA offers its members an ERISA-

governed multiple-employer pension program for their employees. NTCA's plan has over

17,000 participants, including plaintiffs' employees on whose behalf plaintiffs have made

contributions, and assets of approximately $2.4 billion.

19.     Defendant NTCA Retirement and Security/Savings Plan Trustee Committee

("NTCA Committee") is the named fiduciary of the NTCA multiple-employer pension program

offered and provided by NTCA and to which plaintiffs have contributed substantial sums for the

benefit of their respective employees. All references in this complaint to "NTCA" include both

NTCA and the NTCA Committee.

## JURISDICTION AND VENUE

20.     The Court has jurisdiction over plaintiffs' claims in this matter as the claims are

subject to a court of general jurisdiction and pursuant to its power to issue declaratory judgments

under Va. Code § 8.01-184.

21.     Venue is proper in this district pursuant to Va. Code Ann. § 8.01-262 as defendants are residents of, regularly conduct substantial business activity, and have their principal places of business in the County of Arlington, Virginia.

## STATEMENT OF FACTS

22.     Plaintiffs enrolled their employees in the pension plan(s) offered by NTCA and managed, operated, and controlled by the NTCA Committee. Plaintiffs, not their respective employees, pay dues to be members of NTCA, and have made all the contributions to the NTCA plan at issue in this case. In the event this Court determines defendants' withdrawal liability assessment is valid, plaintiffs are the parties responsible for paying the withdrawal liability.

23.     The NTCA plan to which plaintiffs have contributed and which NTCA holds and controls for the benefit of plaintiffs' employees is a multiple-employer pension plan governed by ERISA.

24.     Plaintiffs have a right to withdraw from the NTCA plan. Plaintiffs want to withdraw all funds currently held by NTCA in its pension plan which NTCA holds for the benefit of plaintiffs' employees. Upon withdrawal, plaintiffs will transfer all withdrawn funds to a subsequent plan or plans where the transferred funds will be held for the benefit of plaintiffs' employees.

25.     Participation in the NTCA plan has become increasingly costly and less attractive as NTCA has resisted controlling costs. Instead, NTCA has recommended shifting the increased cost burden to plaintiffs' present and future employees by, for example, encouraging employers, including plaintiffs, to offset some of NTCA's increased costs by imposing a surcharge on contributions; by requiring prefunding of surcharge payments; by decreasing contributions to the plan; by adding an employee contribution obligation; and by extending the waiting period for

9

plan eligibility. Plaintiffs find NTCA's recommended "solutions" unappealing and not in the

best interest of their present and future employees.

26.     In a letter dated September 13, 2018, NTCA's counsel confirmed that the NTCA

plan to which plaintiffs have contributed and in which their employees participate is an ERISA-

governed multiple-employer plan.

27.     Over a number of months, plaintiffs and their representatives have had

communications, both orally and in writing, with NTCA and its counsel regarding plaintiffs'

withdrawing from the NTCA plan. Throughout the course of the communications, NTCA has

not deviated from asserting that it will impose millions of dollars of withdrawal liability at the

moment of withdrawal. The millions of dollars of demanded withdrawal liability charges are an

NTCA-imposed condition of withdrawal. The allegations herein with respect to NTCA's

position in connection with plaintiffs' withdrawing from NTCA's multiple-employer plan are

based on plaintiffs' reasonable inquiry, including direct communications with NTCA and its

counsel.

28.     NTCA set forth in a memorandum its position of the action it would take on the

occasion of a plaintiffs' withdrawing from NTCA's plan: "[T]he member's pro rata plan assets

will be compared to their [sic] liability figure (including the annuity purchase cost if applicable).

If the liability figure is greater than the asset figure, then an additional top-up contribution will

be required of the employer; this is known as the withdrawal liability." This NTCA

memorandum cites no ERISA statutory authority for imposing this "additional top-up

contribution" (withdrawal liability).

29.     The net effect of NTCA's position on plaintiffs' withdrawing all funds from all

NTCA plans is that NTCA would require plaintiffs to pay a withdrawal liability charge of over

10

$10 million as a condition and consequence of plaintiffs' withdrawing. This enormous charge creates a powerful disincentive to withdraw, despite plaintiffs' right to do so, and severely harms plaintiffs. NTCA's claimed "right" to impose an enormous withdrawal liability charge effectively holds plaintiffs captive despite plaintiffs' clear right – a right which NTCA does not contest – to withdraw.

30.     In a letter dated January 9, 2019, NTCA's counsel did not assert that NTCA's claimed "authority" for imposing withdrawal liability arose or was derived from ERISA; rather, the sole identified source for this claimed "authority" is the NTCA plan document titled "Specifications of the Retirement and Security Program for Employees of NTCA [a]nd Its Members" (called "Program Specifications" or "Specs").

31.     The Program Specifications state that the term "'[m]ember' means a telephone system, telecommunications system, or other entity which is a member of the Association, and the Association itself." Plaintiffs meet this description. In addition, the section of the Specs addressing withdrawal liability contemplates that the "member", *i.e.*, the employer, is responsible for making the withdrawal liability payment.

32.     In a letter dated September 13, 2018, NTCA's counsel asserted that "ERISA does not provide any particular rules for withdrawal liability from multiple employer plans." To the contrary, ERISA provides extremely "particular rules for withdrawal liability from multiple employer plans." Those "particular rules" are that Congress has authorized such plans to impose or assess a withdrawal liability in two circumstances only: (1) if the withdrawing employer is a "substantial employer," as defined by ERISA, 29 U.S.C. § 1301(a)(2); or (2) if the withdrawing employer made contributions to the plan within five years preceding termination of the plan. 29 U.S.C. §§ 1363, 1364. In that same September 13 letter, NTCA's counsel stated that "[t]he

11

Program does not have any 'substantial employers,'" and thus, the authority conferred by 29

U.S.C. § 1363 is inapplicable. The plan is not terminating, and thus the authority conferred by

29 U.S.C. § 1364 is similarly inapplicable.

33.     Congress has granted general authority to impose a withdrawal liability to a type

of ERISA plan *other than* the NTCA plan at issue in this case. For multi-employer plans, a type

of plan *not* at issue in this case, Congress enacted in 1980 the Multiemployer Pension Plan

Amendments Act ("MPPAA"), 29 U.S.C. §§ 1381-1461, to grant multi-employer plans (plans

altogether unlike the NTCA plan) general, not narrowly defined, authority to impose withdrawal

liability and Congress also established in the MPPAA a detailed process for imposing

withdrawal liability. While Congress granted authority to multi-employer plans to impose

withdrawal liability, it has *not* granted any counterpart or remotely comparable general

withdrawal liability-imposing authority to multiple-employer plans (the NTCA plan). Since

1980, solely by virtue of the MPPAA, multi-employer plans (not the NTCA plan) have had

general authority to impose withdrawal liability because Congress granted multi-employer plans

this authority in the MPPAA. Congress has not extended that same authority or any comparable

authority to multiple-employer plans (the NTCA plan); instead, Congress has strictly limited the

withdrawal liability authority of plans such as the NTCA plan to the two narrow circumstances

discussed above, neither of which has any applicability here.

34.     NTCA asserts "plan document" or "program authority" to self-confer, as

distinguished from congressionally authorized, "authority" to impose withdrawal liability. In a

letter dated September 13, 2018, NTCA's counsel stated that "the NTCA Program provides for

payment of a withdrawing employer's liability at or soon after the time of its withdrawal from

the Program to protect the Program and the remaining employers." NTCA's counsel reiterated this position in a letter dated January 9, 2019.

35.    NTCA's asserted "authority" to impose withdrawal liability with respect to its multiple-employer plan proceeds from a fundamentally flawed understanding of statutory construction and NTCA's obligations under Virginia law *not* to act in violation of statutory law. As a straightforward matter of statutory construction, NTCA is prohibited from imposing withdrawal liability when, as here, Congress has not granted it authority to do so. Thus, NTCA's reliance on one or more plan or contract provisions as allegedly conferring some claimed contractual "right" to assert such authority on the occasion of plaintiffs' withdrawal from the NTCA pension program is wrong and misplaced because any such provisions violate federal law.

36.    The deliberate and long-standing refusal of Congress to grant multiple-employer plans, like the NTCA plan, general authority to impose withdrawal liability bars NTCA, by plan provision or otherwise, from asserting such authority. Were it otherwise, there would have been neither reason nor need for Congress to define the two categories where multiple-employer plans are authorized to impose a withdrawal liability charge (neither of which applies here). *See* 29 U.S.C. §§ 1363, 1364. Instead, multiple-employer plans, without benefit of congressional authorization, could simply exercise such authority (as NTCA here claims it has the "right" to do). Congress, however, quite clearly rejected the notion that plans have extra-statutory authority to impose withdrawal liability. Congressional authorization is required for multiple-employer plans to impose withdrawal liability, and Congress has authorized multiple-employer plans to impose withdrawal liability only in the two circumstances identified in §§ 1363, 1364. Otherwise, multiple-employer plans lack such authority.

13

37.    Similarly, there would have been neither reason nor need for Congress in the MPPAA to specifically grant general withdrawal liability authority to multi-employer plans. Multi-employer plans would not have needed the MPPAA's grant of authority because, again, under NTCA's unlawful approach, those plans could have just claimed such authority without congressional authorization. Congress, however, determined that congressional authorization was (is) necessary for multi-employer plans to have general withdrawal liability authority. Congress has legislated in this area with great precision by granting this general authority to multi-employer plans and expressly withholding it from multiple-employer plans.

38.    The net effect of NTCA's unauthorized "self-help" position is to render superfluous, meaningless, and essentially to nullify a great deal of careful congressional legislative action. According to NTCA, Congress need not have granted narrowly defined withdrawal liability authority to multiple-employer plans or, in the MPPAA, granted broad general authority to multiple employer plans because each and every plan of both types could simply assert such authority by inserting authority-granting provisions in their respective plan documents.

39.    There is a compelling logic to the deliberate choices Congress has made in granting (or not) the authority to impose withdrawal liability. With respect to multiple-employer plans, Congress was concerned about the impact on plan solvency if a "substantial employer" withdrew and, accordingly, Congress granted plans the authority to impose withdrawal liability on a withdrawing "substantial employer[s]." *See* § 1363. Congress was also concerned about a plan's ability to pay claims when the plan terminates and, accordingly, Congress granted plans the authority to impose liability on employers which had contributed to the plan in the preceding five years. *See* § 1364.

14

40.     With respect to multi-employer plans, based on experience accumulated in the years between ERISA's enactment in 1974 and 1980 when the MPPAA was enacted, Congress faced the problem of too many employers withdrawing from plans. These plans, established through labor-management collective bargaining, presented a significant risk that participant withdrawal would result in inadequate assets, including insurance protection, to fund obligations to the remaining employees. In the MPPAA, Congress addressed this problem by granting multi-employer plans general withdrawal liability authority, authority that multi-employer plans did not have prior to the MPPAA. Congress obviously had the opportunity in 1980 (and in the many years since) to extend this authority to multiple-employer plans. Congress did not do so in 1980 and has never done so.

41.     In addition to NTCA's being without authority to impose withdrawal liability, its proposed methodology for calculating any such liability is unlawful, unfair, and violates ERISA. (These allegations and the related claim in Count Two *infra* regarding NTCA's unlawful methodology for calculating withdrawal liability are without prejudice to plaintiffs' principal claim that NTCA is without authority to impose such liability. These allegations and Count Two assume, *arguendo* only, and plaintiffs expressly deny, that NTCA has authority to impose withdrawal liability with respect to its multiple-employer plan.)

42.     The key assumption in calculating withdrawal liability is the interest rate used to determine the present value of plan liabilities. The interest rate NTCA proposes to use in calculating plaintiffs' employer's withdrawal liability is an unauthorized and unfair rate.

43.     On July 26, 2018, NTCA's Director Pension Services confirmed the unfairness of NTCA's approach in correspondence to plaintiffs: "The Annual Funding Notice (AFN) uses of the plan's long-term assumed rate of return of 7.0% as the discount rate in valuing the present

15

value of liabilities. A program withdrawal calculation uses the PBGC plan termination rates in valuing the liability; current ~ 2.6%. The latter produced a significantly higher liability value." NTCA's exceedingly low, arbitrary, and capricious rate of approximately 2.6% is not used for any purpose other than calculating withdrawal liability.

44.     The proper interest rate is, like withdrawal liability, a subject on which Congress has spoken with clarity.  In plan settings unlike the present case where Congress has authorized ERISA plans to impose withdrawal liability, Congress has enacted rules with respect to interest rates.  In the two narrow categories where a multiple-employer plan is authorized to impose withdrawal liability, *i.e.*, when the withdrawing employer is a "substantial employer" or when the plan is terminating, Congress permits plans to adopt by regulation a methodology for calculating the liability so long as the methodology satisfies an "equitable basis" test. *See* 29 U.S.C. §§ 1363, 1364. NTCA's use of an artificially low interest rate violates this rule.

45.     In the case of multi-employer plans, the MPPAA requires that the plan actuary employ "actuarial assumptions and methods which, in the aggregate, are reasonable (taking into account the experience of the plan and reasonable expectations) and which, in combination, offer the actuary's best estimate of anticipated experience under the plan." 29 U.S.C. § 1393(a)(1). NTCA's use of an artificially low interest rate violates this rule.

46.     NTCA's use of an interest rate in the range of 2.6% to calculate withdrawal liability is neither "reasonable (taking into account the experience of the plan and reasonable expectations)," nor is it a rate which has an "equitable basis."

47.     NTCA's proposed use of the artificially low rate of approximately 2.6% (a rate NTCA uses only when it calculates withdrawal liability) inflates tremendously and unfairly the claimed withdrawal liability to the great benefit of NTCA at plaintiffs' great burden and expense.

16

48.     Plaintiffs are harmed by NTCA's actions and proposed actions. The effect of

NTCA's actions and proposed actions is to unfairly, unreasonably, and unlawfully burden

plaintiffs' right to withdraw from the NTCA plan, effectively barring plaintiffs from

withdrawing, by imposing an enormous unauthorized cost. Plaintiffs are without an adequate

remedy at law. Plaintiffs seek declaratory and, if necessary, injunctive relief to resolve the real

and substantial dispute between the parties, to prevent NTCA's unlawful conduct, and to prevent

irreparable harm to plaintiffs.

## COUNT ONE – DECLARATORY JUDGMENT
### (CONTRACT PROVISIONS PURPORTEDLY AUTHORIZING IMPOSITION OF WITHDRAWAL LIABILITY ARE INVALID AS THEY VIOLATE FEDERAL LAW)

49.     Plaintiffs adopt and incorporate by reference all of the previous paragraphs of this

complaint as if all were here fully set forth.

50.     In all matters related to NTCA's operation, management, and control of NTCA's

pension plan, NTCA is required, among other things, to comply with all statutes, including

federal statutes, and any plan provision contrary to a statute, federal or state, is invalid. Settled

Virginia law holds that a contract made in violation of a statute is unenforceable by the guilty

party; therefore, any contractual terms that violate ERISA (NTCA's asserted right to impose

withdrawal liability) are unenforceable under Virginia law.

51.     Congress has expressly *not* granted NTCA, as the party operating, managing, and

controlling a multiple-employer plan, the authority to impose withdrawal liability when an

employer withdraws from the NTCA plan. NTCA's assertion of such authority by demanding an

enormous withdrawal liability charge as a consequence or condition of plaintiffs' withdrawing

from NTCA's multiple-employer plan is unlawful. Congress, through ERISA, denied NTCA

this authority which Congress has not granted, and which Congress has taken great care to deny.

A regulatory statute within the power of Congress to enact may not be defeated by private

17

contractual provisions, as NTCA claims the right to do. NTCA is without authority to impose a withdrawal liability charge except in the two narrow circumstances where Congress has authorized it to do so, *see* 29 U.S.C. §§ 1363, 1364, neither of which is applicable to plaintiffs' withdrawal.

52.     NTCA is without authority to impose withdrawal liability in connection with its multiple-employer plan from which plaintiffs seek to withdraw. NTCA's assertion of the right to impose contractual withdrawal liability is arbitrary, capricious, and contrary to the statutory and federal common law of ERISA. Congress has spoken directly and clearly on the subject of imposing a withdrawal charge in the case of multiple-employer plans and Congress has left no room for doubt that such authority exists only when and if Congress has granted it. Here, indisputably, Congress has not.

53.     Any NTCA plan provision, policy, or practice contrary to the ERISA provisions governing withdrawal liability is invalid and unenforceable, and cannot be invoked or used to interfere with or burden plaintiffs' right to withdraw from the NTCA plan(s). NTCA's assertion of the right to demand and impose withdrawal liability violates the letter, intent, and spirit of the statutory and federal common law of ERISA, and thus any assertion by NTCA that it has this right violates its duties and obligations under Virginia law.

54.     NTCA and the NTCA Committee are required to comply with Virginia law, and Virginia law prohibits contractual provisions that run afoul of statutory law. NTCA's and the NTCA Committee's claimed "right" to impose withdrawal liability violates Virginia law, and thus no such "right" exists and any plan or contract provision contrary to federal statutory law is invalid and unenforceable.

18

## COUNT TWO – DECLARATORY JUDGMENT
### (NTCA'S PROPOSED METHODOLOGY FOR CALCULATING ANY WITHDRAWAL LIABILITY IS INVALID AS IT VIOLATES FEDERAL LAW)

55.     Plaintiffs adopt and incorporate by reference all of the previous paragraphs as if all were here fully set forth.

56.     This claim assumes, *arguendo* only, and expressly does not concede, that NTCA has any authority to impose withdrawal liability.  Assuming, and expressly without conceding, that NTCA has any authority to demand and impose withdrawal liability as a condition of plaintiffs' withdrawing from NTCA's multiple-employer plan, *but see supra* Count One (NTCA is without such authority), NTCA's proposed method of doing so is unlawful, inequitable, unfair, unreasonable, discriminatory, arbitrary, and capricious.

57.     NTCA is required as a matter of Virginia law to comply with all statutes, including federal statutes, and any plan provision, policy, or NTCA action contrary to a statute, federal or state, is invalid and unenforceable under Virginia law.

58.     NTCA's proposed approximately 2.6% interest rate assumption, that being the key assumption in calculating any claimed withdrawal liability, is unlawful, arbitrary, discriminatory, unfair, unreasonable, and not reflective of anticipated plan performance.  Rather, it is an interest rate which NTCA has unlawfully selected to harm and disadvantage plaintiffs to inflate the claimed withdrawal liability and create a huge unearned "windfall" for NTCA.

59.     NTCA's assertion of the right to calculate withdrawal liability using an unreasonably low and unjustifiable interest rate violates the letter, intent, and spirit of the statutory and federal common law of ERISA because it is inequitable, *see* 29 U.S.C. §§ 1363, 1364, and because it does not "offer the [plan's] actuary's best estimate of anticipated experience under the plan." *See* 29 U.S.C. § 1393(a)(1).

60. A regulatory statute within the power of Congress to enact may not be defeated by private contractual provisions, as NTCA claims the right to do. Any NTCA plan provision, policy, or practice contrary to the ERISA provisions governing the appropriate interest rate for calculating withdrawal liability is invalid and unenforceable and cannot be invoked or used to interfere with or burden plaintiffs' right to withdraw from the NTCA plan. The rate NTCA uses must comply with the standards of ERISA. NTCA's proposed rate of approximately 2.6% does not.

61. NTCA's assertion of the right to use an arbitrary, artificially low discount rate which highly advantages NTCA at the expense of plaintiffs violates the letter, intent, and spirit of the statutory and federal common law of ERISA, and thus NTCA has no right to use such a rate as doing so violates Virginia law, and any NTCA plan provision, policy, or practice purporting to authorize NTCA to use such a rate is invalid and unenforceable.

## PRAYERS FOR RELIEF

**WHEREFORE**, plaintiffs pray as follows:

1. that the Court declare that NTCA and the NTCA Committee may not take any action in connection with plaintiffs' withdrawal transaction contrary to ERISA or beyond that which ERISA authorizes and permits as doing so violates Virginia law;

2. that the Court declare that NTCA cannot condition plaintiffs' withdrawing from NTCA's multiple-employer plan by imposing a withdrawal liability charge;

3. if the Court does not find that NTCA's proposed withdrawal liability is invalid, that the Court declare that NTCA's proposed interest rate of approximately 2.6% to calculate any liability is unlawful, and that using such a rate violates ERISA and is unenforceable; and further

20

declare that NTCA is required to use a rate that is equitable and offers the best estimate anticipated experience under the plan;

4.     that the Court grant such interim, preliminary, or permanent injunctive relief as may be necessary to effectuate and enforce the Court's declarations of rights; and

5.     that the Court grant such other further and additional relief as may be necessary and appropriate to provide plaintiffs the full and complete relief to which they show they are entitled.

Dated: March 8, 2019                    Respectfully submitted,

                                        _Robert H. Cox_
                                        James W. Hundley (VA Bar No. 30723)
                                        Robert H. Cox (VA Bar No. 33118)
                                        BRIGLIA HUNDLEY, P.C.
                                        1921 Gallows Road, Suite 750
                                        Tysons Corner, Virginia 22182
                                        jhundley@brigliahundley.com
                                        rcox@brigliahundley.com
                                        Phone: (703) 883-0880
                                        Fax: (703) 883-0899

                                        Ari S. Casper
                                        Ralph S. Tyler
                                        The Casper Firm, LLC
                                        400 East Pratt St., Suite 903
                                        Baltimore, MD 21202
                                        Tel:  410-989-5097
                                        Fax:  410-630-7776
                                        acasper@casperfirm.com
                                        rtyler@casperfirm.com

                                        Counsel for Plaintiffs
                                        (*Pro hac vice* motions to be filed)

21

FILED by Arlington County Circuit Court
03/08/2019



# BRIGLIAHUNDLEY<sub>PC</sub>

**Sandra Barragan**
Direct Dial: (703) 883-0499
sbarragan@brigliahundley.com

March 8, 2019

CL19000758-00
DECL
LETTER

**VIA COURIER**

Arlington County Circuit Court
Attn: Civil Clerk's Office
1424 N. Courthouse Road, Suite 6700
Arlington, Virginia 22201

RE:   New Civil Filing

Dear Clerk:

Please find the following items to be filed:

- Original and four (4) copies of the Complaint;
- Original and one (1) copy of the Request for Preparation of Summons
- Original and one (1) copy of Civil Cover Sheet, and;
- Check made payable to "Clerk of Court" for the amount of $86.00 for the filing fee.

We request that the complaint be served via private process service. Please call Sandra
Barragan at 703-883-0499 to notify when summonses are ready to be picked- up.

Should you have any questions please feel free to contact our office.

Regards,

Sandra Barragan
Legal Assistant to Robert H. Cox

CL19000758-00

CL19000758-00
DECL
ROS

## FILED by Arlington County Circuit Court
03/27/2019

**FIDAVIT OF SERVICE**

| Case:<br>013CL19000758-00 | Court:<br>Arlington County Circuit Court | County:<br>Arlington County, VA | RECEIVED |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Townes Telecommunications, Inc., et al. | | Defendant / Respondent:<br>National Telecommunications Cooperative Association, et al. | 2019 MAR 27 PM 4:15 |
| To be served upon:<br>National Telecommunications Cooperative Association Serve: Corporation Service Company, Registered Agent | | | PAUL FERGUSON, CLERK<br>ARLINGTON CIRCUIT COURT |

I, Sid Jones, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   National Telecommunications Cooperative Association Serve: Corporation Service Company, Registered Agent , 100 Shockoe Slip 2nd Floor , Richmond, VA 23219

**Manner of Service:**   Registered Agent, Mar 22, 2019, 10:45 am EDT

**Documents:**   Summons; Complaint (Received Mar 21, 2019 at 10:41am EDT)

**Additional Comments:**
1) Successful Attempt: Mar 22, 2019, 10:45 am EDT at 100 Shockoe Slip 2nd Floor , Richmond, VA 23219 received by Rene Nordquist at Corporation Service Company, Registered Agent . Age: 60; Ethnicity: Caucasian; Gender: Female; Weight: 180; Height: 5'8"; Hair: Blond; Eyes: Blue; Other: Wears glasses; This person was authorized to accept service of process.

_Sid Jones_                              3/22/2019
Sid Jones                                 Date
Process Server

Served by Elite, LLC
1340 Old Chain Bridge Road #107
McLean, VA 22101
(703) 556-5656

LOUISE B. DUNCAN
Notary Public
Commonwealth of Virginia
Reg. # 7501152
My Commission Expires August 31, 2019

_Subscribed and sworn to before me by the affiant who is personally known to me._

_Louise B. Duncan_
Notary Public

March 22, 2019        August 31, 2019
Date                  Commission Expires

**CERTIFICATE**
**OF**
**CORPORATION SERVICE COMPANY**

**THIS CERTIFICATE MADE** pursuant to Subsection 2(b) of Section 13.1-634, Subsection 2(b) of Section 13.1-763, Subsection 2(b) of Section 13.1-1015 and Section 50-73.4 of the Virginia Code.

**CORPORATION SERVICE COMPANY**, a corporation authorized to do business in the Commonwealth of Virginia, does hereby certify that:

1.  It is incorporated under the Laws of the State of Delaware and was authorized to do business in Virginia on June 1, 2001.

2.  (a)  It maintains a business office in the Commonwealth of Virginia at 100 Shockoe Slip, 2nd Floor, Richmond, VA 23219.

    (b)  Service of process may be made at such business office in the City of Richmond upon corporations, limited liability companies, partnerships, trusts and other entities, associations and persons which have designated it as agent for service of process.

    (c)  The names of the individuals authorized to receive process served upon Corporation Service Company as the agent for service of process of any corporations, limited liability companies, partnerships, trust and other entities, associations and persons which have designated it as such agent are:

Beverley L. Crump             Rene Nordquist
Linda B. Liles                Dustin Kline
Donna Creekmore

**WHEREFORE**, Corporation Service Company has caused its corporate name to be hereunto subscribed this _7_ day of January 2019.

CORPORATION SERVICE COMPANY

BY: _____
    George A. Massih III, Vice President

STATE OF DELAWARE
COUNTY OF NEW CASTLE

The foregoing instrument was acknowledged before me this _7_ day of January 2019, by George A. Massih III.

_____
Notary Public

My Commission Expires: _6-16-20_

# COMMONWEALTH OF VIRGINIA



### ARLINGTON CIRCUIT COURT
Civil Division
1425 NORTH COURTHOUSE RD
ARLINGTON VA
(703) 228-7010

Proof of Service

Virginia:
In the ARLINGTON CIRCUIT COURT

Case number: 013CL19000758-00
Service number: 003
Service filed: March 08, 2019

Served by: SPECIAL PROCESS SERVER
Style of case: TOWNES TELECOMMUNICATIONS INC vs NAT TELECOMMUNICATIONS COOPERA

Service on: NATIONAL TELECOMMUNICATIONS          Attorney:
          COOPERATIVE ASSOCIATION
          R/A: CORPORATION SERVICE CO
          100 SHOCKOE SLIP, 2ND FLOOR
          Richmond, VA 23219

Instructions:

Returns shall be made hereon, showing service of Summons issued Monday, March 11, 2019 with a copy of the
Complaint filed Friday, March 08, 2019 attached.

Hearing date  :
Service issued: Monday, March 11, 2019

For Sheriff Use Only

FILED by Arlington County Circuit Court
03/25/2019

**FIDAVIT OF SERVICE**

| Case:<br>013CL19000758-00 | Court:<br>Arlington County Circuit Court | County:<br>Arlington County, VA |
|---|---|---|
| **Plaintiff / Petitioner:**<br>Townes Telecommunications, Inc., et al. | | **Defendant / Respondent:**<br>National Telecommunications Cooperative Association, et al. |
| **To be served upon:**<br>NTCA Retirement and Security Savings Plan Trustee Commitee Serve: Shirley Bloomfield, CEO | | |

I, Guy Patterson, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** NTCA Retirement and Security Savings Plan Trustee Commitee Serve: Shirley Bloomfield, CEO, 4121 Wilson Blvd, Arlington, VA 22203

**Manner of Service:** Business, Mar 25, 2019, 11:03 am EDT

**Documents:** Summons; Complaint (Received Mar 21, 2019 at 10:41am EDT)

**Additional Comments:**
1) Successful Attempt: Mar 25, 2019, 11:03 am EDT at 4121 Wilson Blvd, Arlington, VA 22203 received by Jennifer Sullivan at NTCA Retirement and Security Savings Plan Trustee Commitee. Age: 55; Ethnicity: Caucasian; Gender: Female; Weight: 110; Height: 5'2"; Hair: Blond; Eyes: Blue; Relationship: She is Ms. Bloomfield's assistant and is authorized to accept service on her behalf.

_____  3/25/2019
Guy Patterson          Date
Process Server

Served By Elite, LLC
1340 Old Chain Bridge Rd Suite 107
Mc Lean, VA 22101
(703) 556-5656

Subscribed and sworn to before me by the affiant who is personally known to me.

_____
Notary Public
3/25/19   April 30/2021
Date          Commission Expires



Original
for Court
of ____


CL19000758-00
DECL
ROS

# COMMONWEALTH OF VIRGINIA



### ARLINGTON CIRCUIT COURT
Civil Division
1425 NORTH COURTHOUSE RD
ARLINGTON  VA
(703) 228-7010

Proof of Service

Virginia:
In the ARLINGTON CIRCUIT COURT

Case number: 013CL19000758-00
Service number: 002
Service filed: March 08, 2019

Served by: SPECIAL PROCESS SERVER
Style of case: TOWNES TELECOMMUNICATIONS INC vs NAT TELECOMMUNICATIONS COOPERA
Service on: NTCA RETIREMENT AND SECURITY          Attorney:
           SAVINGS PLAN TRUSTEE COMMITEE
           SERVE: SHIRLEY BLOOMFIELD, CEO
           4121 WILSON BOULEVARD
           ARLINGTON VA 22203


Instructions:


Returns shall be made hereon, showing service of Summons issued Monday, March 11, 2019 with a copy of the
Complaint filed Friday, March 08, 2019 attached.


Hearing date  :
Service issued: Monday, March 11, 2019

For Sheriff Use Only