# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| TOWNES TELECOMMUNICATIONS, INC., *et al.*, ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> NATIONAL TELECOMMUNICATIONS ) <br> COOPERATIVE ASSOCIATION, *et al.*, ) <br> Defendants. ) | Civil No. 1:19-cv-436 |

## MEMORANDUM OPINION

This removed action is a dispute over whether plaintiffs—seven employers seeking to withdraw from a pension plan—must pay a multi-million-dollar withdrawal liability to defendants—the trade association that offers the plan and the plan trustee. Plaintiffs object to defendants' imposition and calculation of the withdrawal liability. To vindicate their view, plaintiffs filed suit in Virginia state court, claiming that defendants' imposition and calculation of withdrawal liability violate Virginia law. Defendants then removed this case to federal court on the ground that plaintiffs' state law claims involve an important, disputed federal question.

At issue now is plaintiffs' Motion to Remand the case to state court. For the reasons that follow, the motion must be denied; plaintiffs' state law claims require adjudication of a federal issue that is necessarily raised, actually disputed, substantial, and capable of resolution in federal court without disrupting the federal-state balance.

1

# I.

According to the Complaint, plaintiffs are seven telecommunications companies[1] that are members of the National Telecommunications Cooperative Association ("NTCA"), a trade association that represents approximately 800 independent telecommunications companies operating in rural areas of the United States. The NTCA offers its members access to a multiple employer pension plan ("the Plan"), and plaintiffs have elected to participate in the Plan for the benefit of their employees. Defendant NTCA Retirement and Security/Savings Plan Trustee Committee ("NTCA Committee") serves as the plan fiduciary. Importantly, the Plan is governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

Plaintiffs seek to withdraw from the Plan and transfer their employees' pension funds to a different plan because they contend the Plan has become increasingly costly. The NTCA informed plaintiffs that if they withdraw from the Plan, they must pay approximately $10 million in withdrawal liability. Defendants contend that the imposition of this withdrawal liability is authorized—indeed, mandated—by the document establishing the Plan, which is entitled "Specifications of the Retirement and Security Program for Employees of NTCA [a]nd Its Members" ("Program Specifications").

Plaintiffs disagree with this contention. According to plaintiffs, contract provisions that violate a state or federal statute are unenforceable under Virginia law. *See, e.g., Blick v. Marks, Stokes & Harrison,* 360 S.E.2d 345, 348 (Va. 1987) ("Generally, a contract based on an act forbidden by [state] statute is void and no action will lie to enforce the contract."). Plaintiffs further contend that the provisions of the Program Specifications authorizing the imposition of withdrawal

---

[1] Specifically, plaintiffs are Townes Telecommunications, Inc.; Townes Telecommunications Services Corp.; Northeast Florida Telephone Co.; Mokan Dial, Inc.; Choctaw Telephone Company; Circle CC Ranch, Inc.; and First National Bank of Tom Bean. Compl. ¶¶ 11–17.

liability violate ERISA. This, plaintiffs argue, is because ERISA permits the imposition of withdrawal liability on employers participating in *multiemployer* plans, but contains no such authorization with respect to *multiple employer* plans.[2] Plaintiffs also contend that defendants' method for calculating the withdrawal liability violates ERISA. As such, plaintiffs allege that both defendants' planned imposition of withdrawal liability and method of calculating that liability are invalid and unenforceable under Virginia law because they are contrary to ERISA. Accordingly, plaintiffs brought this action in the Circuit Court for Arlington County, Virginia, seeking a declaration that defendants are barred from imposing withdrawal liability and, alternatively, a declaration that defendants are barred from calculating the withdrawal liability as they propose.

Defendants subsequently removed the action to federal court, alleging that both federal question and diversity jurisdiction supported removal. Defendants have since abandoned their diversity jurisdiction argument and now proceed solely on the theory that jurisdiction exists pursuant to 28 U.S.C. § 1331. In this regard, defendants' Notice of Removal alleges that the "action is properly removed . . . because it arises under federal law by alleging as an essential element of the claims a violation of federal law." Notice of Removal ¶ 12. Specifically, defendants argue that jurisdiction exists because plaintiffs' state law claims necessarily raise the disputed and substantial federal issue whether the imposition of withdrawal liability or the method used to calculate that liability violates ERISA.[3]

---

[2] A *multiemployer* plan is collectively bargained and maintained by two or more employers, usually in the same or related industries. 29 U.S.C. § 1002(37)(A). A *multiple employer* plan is not collectively bargained and is maintained by two or more employers that are not related. *See Girl Scouts of Middle Tenn., Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 416 (6th Cir. 2014).

[3] Defendants also argue that the coercive action doctrine supports jurisdiction. The doctrine provides for federal jurisdiction over declaratory judgment actions where "the complaint alleges a claim arising under federal law that the declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff." *Pressl v. Appalachian Power Co.*, 842 F.3d 299, 302 (4th Cir. 2016) (internal quotation marks and citations omitted). Defendants argue that this theory supports jurisdiction because they could bring an action pursuant to 29 U.S.C. § 1132(a)(3) "to enforce . . . the terms of the plan"—namely, the provision requiring plaintiffs to pay withdrawal

3

## II.

Section 1441 of Title 28 of the United States Code provides for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." As such, removal is proper where the state court action could have been initiated in federal district court. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). Congress has granted "[t]he district courts . . . original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Ordinarily, an action "arises under" federal law within the meaning of § 1331 when federal law creates the cause of action. *Gunn v. Minton*, 568 U.S. 251, 257 (2013). But this is not the only circumstance in which a claim may "arise under" federal law. Specifically, "§ 1331 confers federal jurisdiction over state-law causes of action . . . in a special and small class of cases." *Burrell v. Bayer Corp.*, 918 F.3d 372, 376 (4th Cir. 2019) (internal quotation marks and citation omitted). The Supreme Court in *Gunn v. Minton*, 568 U.S. 251 (2013), provided an analytical framework for determining whether, as here, a federal question raised by a state cause of action supports federal jurisdiction. Specifically, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

Defendants argue that plaintiffs' state law action is within this "special and small category of cases in which arising under jurisdiction still lies." *Gunn*, 568 U.S. at 258. This, defendants contend, is because resolution of plaintiffs' claims necessarily raise a disputed and substantial federal issue—namely, whether defendants' planned imposition of withdrawal liability or their

---

liability. Because defendants are correct that the existence of a substantial question of federal law supports jurisdiction, it is unnecessary to reach or decide the question whether the coercive action doctrine might support jurisdiction here.

method of calculating that liability violates ERISA—that "a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* As such, defendants contend that the four requirements for arising under jurisdiction over a state law action are satisfied and thus federal jurisdiction exists. *See id.* Defendants are correct; for the reasons that follow, the ERISA issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.*

A.

First, plaintiffs' state law claims necessary raise the federal issue. A federal issue is necessarily raised where "*every* legal theory supporting the claim requires the resolution of a federal issue." *Dixon v. Coburg Dairy, Inc.,* 369 F.3d 811, 816 (4th Cir. 2004) (emphasis in original). Plaintiffs concede that this first factor is satisfied because plaintiffs cannot succeed on either of their claims without resolution of the ERISA issue. Specifically, plaintiffs' first claim alleges that the Program Specifications are unenforceable under Virginia law insofar as they authorize withdrawal liability because the imposition of such withdrawal liability violates ERISA. Compl. ¶¶ 50–54. Simply put, plaintiffs cannot succeed on this claim without resolving whether imposition of the withdrawal liability violates ERISA. Similarly, plaintiffs' second claim alleges that the method defendants used to calculate the withdrawal liability is invalid under Virginia law because this calculation method also violates ERISA. Compl. ¶¶ 56–61. Simply put, plaintiffs cannot succeed on this claim without resolving whether the method defendants used to calculate withdrawal liability violates ERISA. Accordingly, every legal theory supporting plaintiffs' claims requires the resolution of a federal issue—namely, whether the imposition of withdrawal liability

5

on an employer in a multiple employer plan or the method defendants used to calculate that liability violates ERISA. As such, the federal issue is necessarily raised.

## B.

Second, there is no doubt that the federal issue is actually disputed. *Gunn,* 568 U.S. at 258. Plaintiffs' argument that the issue is not actually disputed is meritless. Specifically, plaintiffs argue that the parties agree that ERISA is silent with respect to the imposition of withdrawal liability on an employer in a multiple employer plan. According to plaintiffs, the federal issue is not actually disputed because they contend that ERISA does not authorize withdrawal liability for multiple employer plans and defendants argue that withdrawal liability is authorized by the Program Specifications. This artful characterization of the issue and the parties' positions attempts to mask the true dispute between the parties. Yet, a straightforward and accurate description of the dispute plainly reveals an actual dispute over the federal issue. Plaintiffs contend that defendants' planned imposition of withdrawal liability, and proposed method of calculating that liability, violates ERISA. Defendants respond that neither the imposition of withdrawal liability nor the method they used to calculate that liability violates ERISA. Indeed, defendants argue that ERISA requires them to impose withdrawal liability. *See* 29 U.S.C. § 1104(a)(1)(D) (requiring a fiduciary such as the NTCA Committee to "discharge [its] duties with respect to a plan . . . in accordance with the documents and instruments governing the plan"). As such, the federal issue presented—namely, whether ERISA permits the imposition of withdrawal liability on employers in multiple employer plans and, if so, whether ERISA permits that liability to be calculated in the manner defendants propose—is actually disputed.

## C.

The parties chiefly dispute whether the third requirement—that the federal issue is substantial—is satisfied. *See Gunn*, 568 U.S. at 258. Importantly, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue." *Id.* at 260 (emphasis in original). As such, "[t]he substantiality inquiry . . . looks instead to the importance of the issue to the federal system as a whole." *Id.* The inquiry "should be informed by a sensitive judgment about whether the existence of federal judicial power is both appropriate and pragmatic." *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996). Ultimately, the question is "whether the dispute is one that Congress intended for federal courts to resolve." *Id.* This inquiry is a demanding one, as "there is a high bar for treating a federal issue as sufficiently 'substantial.'" *Burrell v. Bayer Corp.*, 918 F.3d 372, 385 (4th Cir. 2019). Plaintiffs argue that defendants have failed to demonstrate that the ERISA issue presented here meets this high bar of substantiality. Plaintiffs are incorrect. Contrary to plaintiffs' argument, the ERISA issue presented here is sufficiently important to the federal system to support arising under jurisdiction, as evidenced by (i) ERISA's purpose, (ii) ERISA's broad preemptive effect, (iii) judicial recognition of ERISA's importance, and (iv) the real-world consequences of this purely legal issue.

The importance of the ERISA issue presented here is first confirmed by ERISA's purpose. As the Supreme Court has explained, "[t]he purpose of ERISA is to provide a *uniform regulatory regime* over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (emphasis). To achieve this uniformity, Congress made "employee benefit plan regulation . . . exclusively a federal concern." *Id.* (internal quotation marks and citation omitted). To allow state courts to decide core ERISA issues risks disrupting the uniformity ERISA was

enacted to achieve. And the issue in dispute here—namely, whether and how a multiple employer plan may impose withdrawal liability on an employer—is such a core ERISA issue. Inconsistent answers to this question by states will prevent ERISA plan trustees from being able to protect employees fully and will prevent employers from being able to predict accurately the consequences of their actions. A plan that appears adequately funded may suddenly be underfunded by millions of dollars when an employer withdraws and unexpectedly escapes withdrawal liability, and an employer that moves its employees to a more advantageous plan may suddenly learn it owes the former plan millions of dollars, if either is haled into court in an unexpected state. ERISA was enacted precisely to eliminate this inconsistency and uncertainty.[4] *See Aetna Health Inc.*, 542 U.S. at 208. As such, the ERISA issue here goes to the core of the "uniform regulatory regime" that Congress made "exclusively a federal concern." *Id.*

The requisite substantiality of the ERISA issue presented here is further demonstrated by ERISA's expansive preemption provision. Congress expressly provided that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[,]" with the exception of several particular types of plans.[5] 29 U.S.C. § 1144(a). The Supreme Court has recognized that this preemption provision is "clearly expansive." *California Div. of Labor Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 324 (1997). And the Supreme Court has elaborated that the provision "has a broad scope, and an expensive sweep; and . . . it is broadly worded, deliberately expansive, and conspicuous for its breadth." *Id.* (internal quotation marks and citations omitted). Importantly, the existence of preemption is "an important

---

[4] The Supreme Court has also explained "that Congress through ERISA wanted to ensure that if a worker has been promised a defined pension benefit upon retirement . . . he actually receives it." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 510 (1981) (internal quotation marks and citation omitted). This, too, would be undermined if states developed inconsistent answers to the question whether a multiple employer plan may impose withdrawal liability.

[5] For example, Congress excluded government plans, church plans, and plans "maintained outside of the United States primarily for the benefit of persons substantially all of whom are nonresident aliens." 29 U.S.C. § 1003(b).

clue" regarding whether arising under jurisdiction exists over a state law claim because preemption reveals "Congress's conception of the scope of jurisdiction to be exercised under § 1331." *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318 (2005).

The fact that the parties dispute whether plaintiffs' claims are preempted does not undermine the significance of ERISA's broad preemption provision. Defendants contend that ERISA preempts plaintiffs' state law claims, and plaintiffs disagree.[6] Notwithstanding this dispute, however, ERISA's "deliberately expansive"[7] preemption provision indicates that the ERISA issue presented here is substantial. The existence and breadth of ERISA's preemption provision evinces a congressional judgment regarding the importance of ERISA to the federal system. And the particular issue here—whether imposition of withdrawal liability on an employer in a multiple employer plan, or defendants' method of calculating that liability, violates ERISA—is important to ERISA. As defendants argue, imposing withdrawal liability may be necessary to ensure a plan is adequately funded for the remaining participants. And, as plaintiffs argue, withdrawal liability—particularly when, as here, it is millions of dollars—may serve as a powerful disincentive to an employer wishing to move their employees to a less costly or otherwise more advantageous plan. As such, even if plaintiffs' claims are not preempted by ERISA, these claims nonetheless inescapably raise an issue that is important to ERISA, a statutory scheme with a "deliberately expansive"[8] preemption provision that is "conspicuous for its breadth."[9] This indicates that the issue presented is important to the federal system and thus substantial.

---

[6] This issue is not yet ripe for disposition; it was raised in defendants' Motion to Dismiss, and briefing on the motion was stayed pending resolution of plaintiffs' Motion to Remand.

[7] *California Div. of Labor Standards Enf't*, 519 U.S. at 324.

[8] *Id.*

[9] *Id.*

Moreover, the substantiality of the issue is underscored by the fact that ERISA is one of the few areas in which complete preemption applies. Ordinarily, federal preemption is a defense to a state law claim and does not, pursuant to the well-pleaded complaint rule, provide a basis for removal to federal court. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Under the complete preemption doctrine, however, Congress is said to "so completely pre-empt a particular area" that a plaintiff's state law claim is recharacterized as a federal claim, providing a basis for the defendant to remove the case to federal court. *Id.* at 63–64. The field occupied by ERISA is one of the few areas in which complete preemption applies. *Id.* at 64–67. As the Supreme Court has concluded, Congress has "so completely pre-empt[ed] [this] particular area that any [state] civil complaint raising th[e] select group of claims [in ERISA § 502(a)] is necessarily federal in character."[10] *Id.* at 63–64. Indeed, Congress clearly provided for complete preemption under ERISA. The Conference Report on ERISA describing the civil enforcement provisions of § 502(a) contains "a specific reference to the" complete preemption doctrine in the Labor Management Relations Act ("LMRA"), "and the rest of the legislative history consistently sets out this clear intention to make § 502(a)(1)(B) suits ... federal questions for the purposes of federal court jurisdiction in like manner as ... the LMRA." *Id.* at 66. Thus, the complete preemption of state law claims under ERISA is firmly rooted in congressional intent and reflects the importance of ERISA to the federal system. Because Congress viewed ERISA as so important, any state law claim that may be recharacterized as a claim pursuant to ERISA § 502(a) provides a basis for federal jurisdiction. *Id.* at 63–64. In essence, Congress sought to provide a federal forum for disputes that involve ERISA

---

[10] It is undisputed that complete preemption does not provide jurisdiction here because plaintiffs do not have a cause of action under ERISA. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–67 (1987). ERISA § 502(a)(3)(A) authorizes civil actions "by a participant, beneficiary, or fiduciary ... to obtain ... appropriate equitable relief to redress such violations" of "any provision of this subchapter." 29 U.S.C. § 1132(a)(3). This cause of action does not extend to employers like plaintiffs. *Id.*

even where a plaintiff does not make a claim under ERISA. It is difficult to imagine clearer evidence of ERISA's importance to the federal system.

As plaintiffs are quick to point out, complete preemption does not apply to their claims. This is because plaintiffs' claims cannot be recharacterized as claims pursuant to § 502(a). *See* 29 U.S.C. § 1132(a). That section provides a cause of action to participants, beneficiaries, and fiduciaries—but not employers like plaintiffs—"to obtain ... appropriate equitable relief to redress such violations" of "any provision of this subchapter." *Id.* § 1132(a)(3). Yet even though complete preemption may not apply here, complete preemption is nonetheless relevant to the substantiality inquiry here because it reveals ERISA's importance to the federal system and Congress's desire to resolve ERISA issues in federal court. And, as discussed *supra*, the ERISA issue presented here implicates whether multiple employer plans will be adequately funded and what barriers employers may face when seeking to move to plans more advantageous for their employees. Inconsistent answers among states will undermine the uniform regulation ERISA was intended to provide. As such, the issue presented here is important to the statutory scheme ERISA creates—a statutory scheme that is among the few providing for complete preemption.

The substantial nature of the federal issue is further confirmed by repeated judicial recognition of ERISA's importance to the federal system. Indeed, the Supreme Court has explained that ERISA was "intended to ensure that employee benefit plan regulation would be exclusively a federal concern."[11] *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (internal quotation marks and citation omitted). And in *Franchise Tax Board v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 3–4 (1983), the Supreme Court noted that the ERISA issue

---

[11] The Supreme Court gave this explanation when discussing ERISA's "expansive" preemption provision. *Aetna Health Inc.*, 542 U.S. at 208. Although, as discussed *supra*, the parties dispute whether the expansive preemption provision encompasses plaintiffs' claims, that provision is nonetheless relevant to the substantiality inquiry.

presented—namely, whether "state tax authorities [could] collect unpaid state income taxes by levying on funds held in trust for the taxpayers under an ERISA-covered vacation benefit plan"— was "an important one." Although the Supreme Court found federal jurisdiction did not exist,[12] it noted that this resulted from "reasons involving perhaps more history than logic." *Franchise Tax Bd.*, 463 U.S. at 4. Moreover, in implicit recognition of ERISA's importance to the federal system and the importance of resolving ERISA issues in a federal forum, the Fourth Circuit has held "that the creation of ERISA federal common law establishes 'arising under' jurisdiction." *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 990 (4th Cir. 1990). Specifically, "federal question jurisdiction exists pursuant to ERISA . . . where the issue in dispute is of 'central concern' to the federal statute.'" *Id.* Thus, courts have repeatedly recognized ERISA's importance to the federal system.

Finally, the substantial nature of the ERISA issue is confirmed by the purely legal nature of the ERISA issue raised by plaintiffs' claims and the real-world consequences resolution of that issue will have. In this respect, the Fourth Circuit has explained that "[a]s a practical matter, a 'substantial' question generally will involve a pure issue of law, rather than being fact-bound and situation-specific, because the crux of what makes a question 'substantial' for § 1331 purposes is that it is important . . . to the federal system as a whole, and not just to the particular parties in the immediate suit." *Burrell v. Bayer Corp.*, 918 F.3d 372, 385 (4th Cir. 2019). The issue here—

---

[12] The Supreme Court's conclusion that jurisdiction was lacking in *Franchise Tax Board* is not dispositive. As relevant here, the Supreme Court concluded that federal jurisdiction did not lie with respect to a declaratory judgment claim that would require "a construction of ERISA and/or an adjudication of its preemptive effect and constitutionality." *Franchise Tax Bd.*, 463 U.S. 1, 14 (1983). In essence, the Supreme Court concluded that the dispute—the validity of a state tax-levying regulation—lacked the requisite federal character needed to fall within the limited scope of federal question jurisdiction. *Id.* at 15–28. In contrast, the suit here contains the requisite federal character. Moreover, *Franchise Tax Board* was decided before the Supreme Court identified the four factors required for federal question jurisdiction over a state claim that raises a disputed federal issue. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). And the Supreme Court has recognized that, prior to the identification of these factors, the jurisprudence regarding the "slim category" of state law claims arising under § 1331 resembled a canvas that "look[ed] like one that Jackson Pollock got to first." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

namely, whether withdrawal liability may be imposed on an employer leaving a multiple employer plan and how that liability may be calculated—is such a "pure issue of law." *Id.* As such, "its resolution w[ill be] both dispositive of the case and . . . controlling in numerous other cases." *Empire Healthchoice Assurance., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006). Thus, this case presents an opportunity to "settle[] once and for all" a disputed federal issue that is purely legal in nature, counseling in favor of federal jurisdiction. *Id.* It does not present an issue that "is fact-bound and situation-specific" and thus less significant to the federal system. *Id.* Accordingly, the ERISA issue presented is important to the federal system as a whole and thus sufficiently substantial to warrant arising under jurisdiction.

### D.

Fourth, as required by *Gunn*, the federal issue raised by plaintiffs' state law claims is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Plaintiffs argue that allowing removal here would be inconsistent with the congressionally-approved balance of federal and state judicial responsibilities. But plaintiffs argue only that this result necessarily follows from their conclusion that the third requirement—substantiality—is not met. Plaintiffs are correct that resolution of the fourth factor essentially turns on the third, as whether an issue is important to the federal system as a whole largely determines whether its resolution by a federal court is appropriate or risks disrupting the federal-state balance. *See id.* at 264. But plaintiffs reach the wrong conclusion because they are incorrect that substantiality is not satisfied here. As discussed *supra*, the ERISA issue presented is important to the federal system. And ERISA contains a "deliberately expansive" preemption provision to prevent states from interfering with ERISA's uniform regulation. *California Div. of Labor Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 324

(1997). Yet, Congress did not stop there; Congress viewed ERISA issues as so significant that it provided for complete preemption. As such, Congress "so completely pre-empt[ed] [this] particular area that any [state] civil complaint raising th[e] select group of claims [in ERISA § 502(a)] is necessarily federal in character" and may be removed to federal court. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987). Thus, resolution of this ERISA issue by a federal court will not intrude upon state courts; rather, such an issue properly belongs in federal court.

Moreover, a finding of federal question jurisdiction here will not open the federal courthouse doors to a host of traditionally state court actions. In this respect, the Supreme Court has explained that where "exercising federal jurisdiction over" a particular type of state law claim "would . . . herald[] a potentially enormous shift of traditionally state cases into federal courts," Congress is unlikely to have intended such a result. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 319 (2005). That is not the case here; few state declaratory judgment actions focus on a contested and purely legal ERISA issue like that presented here. It follows that "jurisdiction over actions like [plaintiffs' will] not materially affect, or threaten to affect, the normal currents of litigation." *Id.* Accordingly, "there is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of th[ese] state-law [declaratory judgment] claim[s]." *Id.* In sum, plaintiffs' state law causes of action are among the "special and small category of cases in which arising under jurisdiction still lies." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (internal quotation marks and citation omitted).

### III.

Plaintiffs attempt to avoid this conclusion by advancing several arguments. Although not without some force, these arguments are ultimately persuasive. Plaintiffs first argue that the ERISA issue presented by their claims is not substantial because Congress has not provided them with a

14

cause of action. Although plaintiffs' lack of a cause of action under ERISA is relevant to the substantiality inquiry, it is not dispositive. And, for the reasons discussed *supra*, other factors outweigh it and counsel in favor of finding the issue sufficiently substantial.

Previously, plaintiffs' lack of a cause of action would have appeared to preclude arising under jurisdiction. In *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 819 (4th Cir. 2004), the Fourth Circuit concluded that "[i]f a particular plaintiff is barred from bringing [a] private, federal cause of action, . . . no federal subject matter jurisdiction exists over that plaintiff's state cause of action predicated on a violation of the same federal law." Yet the Fourth Circuit cited only *Mulcahey v. Columbia Organic Chemicals Co., Inc.*, 29 F.3d 148 (4th Cir. 1994), for this proposition. And the relevant part of *Mulcahey*, in turn, relied primarily on *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986). The Supreme Court has since revisited its reasoning in *Merrell Dow* and clarified that the absence of a federal cause of action is not a bar to federal jurisdiction over a state law claim. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 316–20 (2005). Specifically, in *Grable*, the Supreme Court instructed that "*Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the sensitive judgments about congressional intent that § 1331 requires." *Id.* at 318 (internal quotation marks and citation omitted). Indeed, the Supreme Court in *Grable* concluded federal jurisdiction existed over a state law claim even though no federal cause of action was available to the plaintiff. *Id.* at 316–20. In so doing, the Supreme Court expressly rejected the argument that "[b]ecause federal law provides for no quiet title action that could be brought against [defendant], . . . there can be no federal jurisdiction." *Id.* at 317. Accordingly, *Dixon* can no longer be read as foreclosing arising under jurisdiction over a state law claim where the plaintiff is barred from bringing a federal cause of action. Indeed, the Fourth Circuit in *Burrell v. Bayer Corp.*, 918

F.3d 372 (4th Cir. 2019), recognized just that. There, the Fourth Circuit noted that "[t]he Court in *Grable* took the opportunity to clarify that *Merrell Dow* does not establish a bright-line rule that there can be no jurisdiction in contexts in which Congress has declined to provide a private right of action for enforcement of a federal statute." *Burrell*, 918 F.3d at 387 n.5. Accordingly, plaintiffs' lack of a federal cause of action, although relevant, does not bar federal jurisdiction here. And, for the reasons discussed *supra*, the ERISA issue embedded in plaintiffs' state law claims is nonetheless sufficiently substantial to warrant federal jurisdiction over those claims.

Plaintiffs also argue that arising under jurisdiction cannot lie because the ERISA issue presented here is not as significant as the federal issues in cases where the Supreme Court has found arising under jurisdiction exists over state law claims. Plaintiffs are correct that the federal issue here may not be as significant as the issues in those cases. In *Grable*, for example, the meaning of a federal tax provision was at issue and its resolution would affect the government's "strong interest in the prompt and certain collection of delinquent taxes, and the ability of the IRS to satisfy its claims from the property of delinquents." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 311 (2005). And in *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921), the constitutionality of federally-issued bonds was at issue. The question whether the imposition of withdrawal liability on an employer in a multiple employer plan violates ERISA is arguably not as significant as these issues. But that does not mean it is insufficiently substantial to warrant arising under jurisdiction. The Supreme Court has decided cases that clearly satisfy, and clearly fail to satisfy,[13] the requirements for arising under jurisdiction over a state law claim. But the Supreme Court has had little occasion to decide cases that do not fall at the extremes.

---

[13] For example, the Supreme Court in *Gunn v. Minton*, 568 U.S. 251 (2013), refused to extend federal jurisdiction to a state legal malpractice claim premised on an alleged error in a patent case. In so doing, the Supreme Court emphasized that because the federal patent issue arose in the context of a malpractice action, it was "posed in a merely

16

Yet, significantly, various circuit courts—including the Fourth Circuit—have had such occasion. And these circuits—again, including the Fourth Circuit—have found arising under jurisdiction over state law claims in circumstances more akin to those here. For example, in *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799 (4th Cir. 1996), the Fourth Circuit found § 1331 jurisdiction over a state action that raised the disputed federal issue of whether the plaintiff was a part "owner," as defined by the Clean Air Act, and thus entitled to a proportionate share of emission allowances issued by the Environmental Protection Agency. The Fourth Circuit concluded that the issue was sufficiently substantial because freely transferrable emission allowances were crucial to the Acid Rain Program and "state variations of interpretation about the nature and initial title to allowances could create uncertainty in the market and thereby undermine the very device that Congress created for reducing pollution." *Ormet Corp.*, 98 F.3d at 807. And in *NASDAQ OMX Group, Inc. v. UBS Securities, LLC*, 770 F.3d 1010, 1023–24 (2d Cir. 2014), the Second Circuit concluded that federal jurisdiction extended to a declaratory judgment action involving state claims that raised "the contours of NASDAQ's federal duty to maintain a fair and orderly market, the scope of that duty, and whether the failure of NASDAQ's systems during the Facebook IPO amounted to a breach of that duty" because the issues were "sufficiently significant to the development of a uniform body of federal securities regulation."

In sum, although it is clear that the Supreme Court has found arising under jurisdiction over state law claims that raise federal issues arguably somewhat more significant than the ERISA issue here, this is so because the Supreme Court has had occasion to explore the extremes of the substantiality inquiry, not to color the middle. But, importantly, circuit courts, including the Fourth

---

hypothetical sense" and would "not change the real-world result of the prior federal patent litigation." *Gunn*, 568 U.S. at 261.

Circuit, have made clear that a federal issue like the ERISA issue presented here can be sufficiently substantial to warrant arising under jurisdiction over a state law claim.

IV.

Plaintiffs are correct that there is only a "special and small category of cases in which arising under jurisdiction still lies" over state law causes of action. *Gunn v. Minton*, 568 U.S. 251, 258 (2013). But this is one of those cases. The ERISA issue confronted here is necessarily raised, actually disputed, substantial, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress. As such, federal jurisdiction properly lies and plaintiffs' Motion to Remand must be denied. *See id.* at 258.

An appropriate Order will issue.


Alexandria, Virginia
July 9, 2019

/s/
_____
T. S. Ellis, III
United States District Judge