IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

TOWNES TELECOMMUNICATIONS, )
INC., *et al.*, )
       Plaintiffs, )
       )
v. )   Civil No. 1:19-cv-436
       )
NATIONAL TELECOMMUNICATIONS )
COOPERATIVE ASSOCIATION, *et al.*, )
       Defendants. )

## MEMORANDUM OPINION

This removed action is a dispute over whether plaintiffs, seven employers seeking to withdraw from a pension plan (the "Plan"), must pay a multi-million-dollar withdrawal liability to defendants, the trade association that offers the plan and the plan trustee. Plaintiffs object to defendants' imposition and calculation of the withdrawal liability. To vindicate their view, plaintiffs filed suit in Circuit Court for Arlington County, Virginia, seeking a declaration pursuant to Virginia Code § 8.01-184 that defendants' imposition and calculation of withdrawal liability violates Virginia's common law of contracts because the Plan's terms that authorize and calculate withdrawal liability violate the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq. See Blick v. Marks, Stokes & Harrison*, 234 Va. 60, 64 (1987) ("Generally, a contract based on an act forbidden by a statute is void and no action will lie to enforce the contract.").

Defendants promptly responded to the Complaint by removing the case to federal court pursuant to 28 U.S.C. § 1331 on the ground that the plaintiffs' state-law claims involve an important, disputed federal question governed by ERISA. Plaintiffs then sought a remand to state court, arguing that the Complaint, on its face, states a state-law claim and seeks only a state law

1

remedy. But plaintiffs' remand effort failed; plaintiffs' Motion to Remand was denied because plaintiffs' claims were among the few state-law claims that created "arising under" federal jurisdiction because plaintiffs' state-law claims necessarily raise the disputed and substantial federal question whether the imposition of withdrawal liability or the method used to calculate that liability violates ERISA. *Townes Telecomms., Inc. v. Nat'l Telecomms. Coop. Ass'n*, 391 F. Supp. 3d 585, 596 (E.D. Va. 2019) (citing *Gunn v. Minton,* 568 U.S. 251, 258 (2013) (holding that federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress)).

At issue now is defendants' Motion to Dismiss (i) both Counts pursuant to Rule 12(b)(6), Fed. R. Civ. P., on the ground of preemption and (ii) Count II pursuant to Rule 12(b)(1) on the ground that plaintiffs lack Article III standing to lodge that claim. For the reasons that follow, plaintiffs' state-law claims must be dismissed as they are preempted, and defendants' motion to dismiss for lack of standing must be denied.

I.

According to the Complaint, plaintiffs are seven telecommunications companies[1] that are members of defendant National Telecommunications Cooperative Association ("NTCA"), a trade association that represents approximately 800 independent telecommunications companies operating in rural areas of the United States. The NTCA offers its members access to a multiple-employer pension plan ("the Plan"), and plaintiffs have elected to participate in the Plan for the

---

[1] Specifically, plaintiffs are Townes Telecommunications, Inc.; Townes Telecommunications Services Corp.; Northeast Florida Telephone Co.; Mokan Dial, Inc.; Choctaw Telephone Company; Circle CC Ranch, Inc.; and First National Bank of Tom Bean. Complaint ¶¶ 11–17.

2

benefit of their employees. Defendant NTCA Retirement and Security/Savings Plan Trustee Committee ("NTCA Committee") serves as the Plan fiduciary.

Plaintiffs seek to withdraw from the Plan because the Plan has become too costly. In response to plaintiffs' declared intention to withdraw from the Plan, defendant NTCA informed plaintiffs that in the event plaintiffs withdraw from the Plan, then, pursuant to the Plan's terms, plaintiffs must pay the Plan approximately $10 million in withdrawal liability.

Because the parties sharply dispute the imposition of withdrawal liability and the calculation of that liability, it is useful to address briefly the Plan's terms relating to withdrawal liability and its calculation.[2] To begin with, the Plan, by its terms, clearly permits employers to withdraw from the Plan and clearly requires employers to pay withdrawal liability if they do so. Importantly, the Plan, again by its terms, provides employers with two avenues for voluntary withdrawal from the Plan: (i) an Annuity Purchase or (ii) a Spin-off. Each of these avenues for withdrawal from the Plan involves a different method for calculation of an employer's withdrawal liability.

In an annuity purchase withdrawal, the withdrawing employers must fund the Plan's purchase of a commercial annuity that guarantees the benefits of the withdrawing employers' employees and their beneficiaries. Plan Art. VII(C)(4)(a). If the withdrawing employer's "Allocable Assets"[3] have a lower value than the commercial annuity's price, the withdrawing employer must pay the difference to the Plan as withdrawal liability. Plan Art. VII(C)(4)(b). The

---

[2] Plaintiffs argue that the Plan's terms relating to the imposition and calculation of withdrawal liability violate ERISA. Accordingly, the Plan's terms may be considered at the motion to dismiss stage because the Plan's terms are "incorporated into the complaint by reference." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

[3] The Plan defines a withdrawing employer's Allocable Assets as "the Member's Share of Program Liabilities multiplied by the Value of Program Assets less the sum of all balances in Member's Prefunding Accounts." Plan Art. VII(B)(3).

3

Plan would then use the withdrawing employer's Allocable Assets and the withdrawing employer's withdrawal liability payment to purchase the commercial annuity for the purpose of funding employees' pension benefits. Plan Art. VII(C)(4)(a).

The spin-off avenue for an employer's withdrawal from the Plan involves a transfer of the assets and liabilities attributable to the employees to a new plan. *See* Plan Art. VII(A)(3). Such a transfer of assets and liabilities to a new plan may only be made if "each Participant in the Program would receive a benefit immediately after the transfer (determined as if the Program terminated as of such date) that is at least equal to the benefit to which each Participant would be entitled immediately before the transfer (if the Program terminated as of such date)." Plan Art. VII(B)(2)(c). If the value of the withdrawing employer's Allocable Assets is lower than the value of benefits owed to the withdrawing employer's employees and their beneficiaries, the withdrawing employer must pay the difference to the Plan as withdrawal liability. Plan Art. VII(B)(2)(c)(ii). The Plan would then transfer the withdrawing employer's Allocable Assets and the withdrawing employer's withdrawal liability payment to the new plan. *Id.*

Under both avenues for withdrawal, the amount of an employer's withdrawal liability depends on the valuation of a withdrawing employer's Allocable Assets as defined by the Plan. The Plan's terms provide that Allocable Assets are equal to the withdrawing employer's "Share of Program Liabilities multiplied by the Value of Program Assets less the sum of all balances in Member's Prefunding Accounts." Plan Art. VII(B)(3). In other words, the value of Allocable Assets varies directly with the value of the withdrawing employer's Share of Program Liabilities.[4]

---

[4] The withdrawing employer's Share of Program Liabilities is "a ratio where the numerator is the value of the liabilities of the Transferred Participants with respect to such [withdrawing employer] . . . determined on the same basis that the Pension Benefit Guaranty Corporation would use in the event of plan termination as of the date of withdrawal. The denominator is the value of the liabilities of all participants determined on the same basis as the date of withdrawal." Plan Art. VII(B)(3)(a).

4

The withdrawing employer's Share of Program Liabilities is valued using "the same basis that the Pension Benefit Guaranty Corporation would use in the event of plan termination." Plan Art. VII(B)(3)(a). In this manner, the Pension Benefit Guaranty Corporation plan termination rate used to value a withdrawing employer's Share of Program Liabilities affects the valuation of a withdrawing employer's Allocable Assets and, for either avenue of withdrawal under the Plan, the amount of withdrawal liability that a withdrawing employer must pay.

Plaintiffs' two-count Complaint challenges the Plan's terms providing for the imposition and calculation of withdrawal liability. Plaintiffs argue in Count I of the Complaint that the Plan's authorization of the imposition of withdrawal liability violates ERISA and hence violates Virginia's common law. This is so, plaintiffs argue, because although ERISA permits the imposition of withdrawal liability on employers participating in *multiemployer* plans, ERISA contains no such authorization with respect to *multiple-employer* plans, and hence plaintiffs argue that the proper inference is that ERISA does not authorize withdrawal liability with respect to a multiple-employer plan, as here.[5] Count II of plaintiffs' Complaint assumes *arguendo* that withdrawal liability may be imposed and argues that defendants' method for calculating the withdrawal liability violates ERISA. Specifically, plaintiffs claim that defendants will use the Pension Benefit Guaranty Corporation rate, an unlawfully low interest rate, to value plaintiffs' Allocable Assets and, as a result, that any withdrawal liability calculation will overvalue plaintiffs' withdrawal liability.

---

[5] A *multiemployer* plan is collectively bargained and maintained by two or more employers, usually in the same or related industries. 29 U.S.C. § 1002(37)(A). All other pension plans, including *multiple-employer* plans, belong to the residual category of single-employer plans. 29 U.S.C. § 1002(41). A *multiple-employer* plan is not collectively bargained and is maintained by two or more employers that are not related. *See Girl Scouts of Middle Tenn., Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 416 (6th Cir. 2014).

## II.

Defendants seek dismissal of both counts of the Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., on the ground that both claims are preempted by federal law and hence fail to state a claim. As the Fourth Circuit has held, state-law claims that are preempted by ERISA must be dismissed. *See Makar v. Health Care Corp. of Mid-Atlantic (CareFirst)*, 872 F.2d 80, 82–83 (4th Cir. 1989) (dismissing plaintiffs' common law claims against employee benefit plans as preempted without prejudice to plaintiffs pursuing plan remedies). Because preemption is central to defendants' dismissal motion, analysis properly begins with preemption.

ERISA's preemption provision provides that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). As the Memorandum Opinion made clear, "plaintiffs' *state law* causes of action are among the 'special and small category of cases in which arising under jurisdiction still lies.'" *Townes Telecomms., Inc.*, 391 F. Supp. 3d at 596 (quoting *Gunn*, 568 U.S. at 258) (emphasis added). Contrary to plaintiffs' argument characterizing their claims as federal, the existence of arising under jurisdiction does not make plaintiffs' claims federal claims, and plaintiffs' state law claims remain subject to the strictures of § 1144(a). It is undisputed that the Plan is an employee benefit plan. Thus, if plaintiffs' state law claims "relate to" the Plan, ERISA preempts those claims, and dismissal is appropriate.

The Supreme Court has made clear that a state law "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan" that is not "too tenuous, remote, or peripheral." *Shaw v. Delta Airlines*, 463 U.S. 85, 96–97 (1983). In that regard, the Supreme Court has repeatedly emphasized that a state law need not be "specifically designed to affect employee benefit plans" to fall within the "expansive sweep" of ERISA's

6

preemption provision. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48 (1987) (quoting *Shaw*, 463 U.S. at 98). And importantly, plaintiffs cannot "avoid ERISA's preemptive reach by recasting otherwise preempted claims as state-law contract and tort claims." *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 341 (4th Cir. 2007) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004)). The Supreme Court has also made clear that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intention to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 U.S. at 209. Also important is the Fourth Circuit's observation that "ERISA's preemptive scope is not diminished simply because a finding of preemption will leave a gap in the relief available to the plaintiff." *Wilmington Shipping Co.*, 496 F.3d at 341 (4th Cir. 2007) (citing *Davila*, 542 U.S. at 214–15).

Here, ERISA plainly preempts plaintiffs' state law claims as those claims seek a declaration that defendants' imposition and calculation of withdrawal liability in accordance with the Plan's terms violate ERISA. Thus, plaintiffs' claims have an indisputably clear "connection with" an ERISA plan because the claims challenge the Plan's terms as violative of ERISA. *See Shaw*, 463 U.S. at 96–97. Although plaintiffs, in an effort to avoid preemption, have framed their challenge to the Plan's terms as an action for declaratory judgment that the Plan violates Virginia's common law of contracts, this ploy fails; plaintiffs cannot "avoid ERISA's preemptive reach by recasting otherwise preempted claims" in this manner. *Wilmington Shipping Co.*, 496 F.3d at 341 (4th Cir. 2007) (affirming district court's grant of summary judgment in defendant's favor because plaintiffs' state-law claims "merely repackage[d] . . . [an] ERISA claim") (citing *Davila*, 542 U.S. at 214). Put simply, plaintiffs' claims fail because those claims seek to use Virginia contract law to "supplement[ ] . . . the ERISA civil enforcement remedy." *Davila*, 542 U.S. at 209. In sum,

7

ERISA preempts both counts of plaintiffs' Complaint, and hence the Complaint must be dismissed.[6]

Seeking to avoid this result, plaintiffs argue that their claims are not preempted because plaintiffs have a federal common law cause of action under ERISA. This argument falls short for two reasons: first, plaintiffs did not plead a federal common law cause of action under ERISA and second, nor should plaintiffs be allowed to amend the Complaint to plead such a claim because it would be futile to do so.[7]

To be sure, preemption would not apply to a claim under federal common law because § 1144(a), by its terms, only preempts "State laws" and federal claims are not preempted. But as defendants have correctly noted, plaintiffs' argument that the Complaint pleads federal common law claims strays from the Complaint's allegations. Complaint ¶¶ 49–54 (alleging that imposition of withdrawal violates Virginia law because it is contrary to ERISA); *Id.* ¶¶ 55–61 (alleging that calculation of withdrawal liability violates Virginia law because it is inequitable and contrary to ERISA). Accordingly, plaintiffs may not now rely on federal common law causes of action not pleaded in their Complaint nor may plaintiffs effectively amend their Complaint by argument.[8]

Yet even assuming, *arguendo*, that plaintiffs had properly alleged a federal common law cause of action, that argument fails because there is no such federal common law cause of action

---

[6] A moment's reflection discloses that plaintiffs' argument leads to the unacceptable conclusion that any claim that an ERISA plan violates ERISA could be brought as a state claim in state court.

[7] *See Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) ("Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards.").

[8] Plaintiffs have not moved to amend their Complaint pursuant to Rule 15, Fed. R. Civ. P., and defendants correctly argue that plaintiffs cannot amend their Complaint through briefing. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")).

nor should one be implied or created. In certain instances, federal common law may be applied "[w]hen state law has been preempted and ERISA is silent on the matter." *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 563 (4th Cir. 1994). But importantly, courts considering "whether to create and apply federal common law . . . 'are constrained to fashion only those remedies that are appropriate and necessary to effectuate the purposes of ERISA.'" *Id.* at 563–64 (quoting *United States Steel Mining Co. v. District 17, United Mine Workers of Amer.*, 897 F.2d 149, 153 (4th Cir. 1990)). In this regard, the Fourth Circuit has observed that "resort to federal common law generally is inappropriate when its application would conflict with the statutory provisions of ERISA, discourage employers from implementing plans governed by ERISA, or threaten to override the explicit terms of an established ERISA benefit plan." *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir. 1992). Here, it is inappropriate to create a federal common law cause of action for plaintiffs because doing so would (i) conflict with ERISA's civil enforcement provisions that do not permit employers to sue and (ii) threaten to override the explicit terms of the Plan authorizing the imposition of withdrawal liability in accordance with a specified methodology.

The creation of a federal common law cause of action that would allow plaintiffs to challenge the imposition of withdrawal liability would conflict with ERISA's civil enforcement provisions, which do not permit employers in multiple-employer plans to sue to enforce ERISA. *See Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*, 102 F.3d 712, 714 (4th Cir. 1996) ("Federal jurisdiction is limited to the suits by the entities specified in [§ 1132(a).]") (internal quotation marks omitted). Pursuant to § 1132(a), a participant or beneficiary may sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," and a participant, beneficiary, or fiduciary may sue "to enjoin any act or practice which violates any provision of

9

this subchapter or the terms of the plan" or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." §§ 1132(a)(1), (3). For single-employer plans, § 1370(a) allows "a fiduciary, contributing sponsor, member of a contributing sponsor's controlled group, participant, or beneficiary" to bring certain claims regarding withdrawal from or termination of a plan. And, for multiemployer plans, § 1451(a)(1) permits a "plan fiduciary, employer, plan participant, or beneficiary" to bring claims based on withdrawal from or termination of a plan.

As these provisions make clear, ERISA's text does not authorize employers in multiple-employer plans to sue under ERISA, and thus the creation of plaintiffs' desired federal common law cause of action would conflict with ERISA's civil enforcement provisions. Accordingly, contrary to plaintiffs' argument, there can be no federal common law cause of action in this regard. The Sixth Circuit has reached precisely the same result in analyzing ERISA's civil enforcement framework in *Girl Scouts of Middle Tennessee, Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414 (6th Cir. 2014). There, plaintiff, an employer in a multiple-employer plan sought a declaration that permitted plaintiff to withdraw from the plan and required the plan sponsor to participate in a spin-off of assets and liabilities attributable to plaintiff's employees. *Id.* at 417. The Sixth Circuit declined to create a federal common law cause of action because "ERISA is far from silent on" whether an employer may bring claims regarding withdrawal from or termination of a multiple-employer plan; rather, "ERISA simply fails to afford [plaintiff] an avenue for recovery in this context." *Id.* at 421. In the Sixth Circuit's view, to create a federal common law cause of action for the plaintiff in *Girl Scouts of Middle Tennessee* would effectively and impermissibly amend ERISA. *Id.* at 422. So, too, here; because ERISA does not permit employers in a multiple-employer plan to bring a civil action under ERISA, it follows that there can be no federal common law cause

of action to challenge the imposition of withdrawal liability. And it would be impermissible to amend and indeed rewrite ERISA to accomplish otherwise. *See id.* at 425 ("When creating federal law, courts must be cautious that they are not rewriting legislation.").

Moreover, the creation of a federal common law cause of action that permitted plaintiffs to challenge the Plan's imposition and calculation of withdrawal liability would also "threaten to override the explicit terms of an established ERISA benefit plan" authorizing withdrawal liability. *See Singer*, 964 F.2d at 1452. As the Supreme Court has repeatedly observed, ERISA's purpose is "to protect contractually defined benefits." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013) (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985)). Here, the Plan unambiguously permits the imposition of withdrawal liability and its calculation according to the Plan's methodology. The creation of a common law remedy to allow plaintiffs to challenge this would upend the Plan's plain language providing for withdrawal liability.

In sum, ERISA preempts plaintiffs' state-law claims, and plaintiffs did not, and indeed cannot, plead federal common law causes of action to challenge the Plan's imposition and calculation of withdrawal liability. No such federal common law cause of action exists or should be implied. Plaintiffs' state-law claims challenging the Plan's imposition and calculation of withdrawal liability must therefore be dismissed with prejudice because plaintiffs, employers in a multiple-employer plan, have no statutory authority to challenge any aspect of a plan under ERISA and an amendment to plead a federal common law cause of action would therefore be futile.

Plaintiffs also argue that the creation of a federal common law cause of action to challenge defendants' imposition and calculation of withdrawal liability is necessary because ERISA is silent as to whether multiple-employer plans may impose withdrawal liability. Plaintiffs insist that Congress's silence is significant because Congress has acknowledged in other statutory provisions

11

that employers may face liability upon withdrawal from an ERISA plan, namely under §§ 1363 and 1364, which require the calculation of withdrawal liability on an equitable basis when a substantial employer withdraws from an ERISA plan, and §§ 1393(a)(1) and 1451 of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1461, which provide that a multiemployer plan may impose withdrawal liability on a withdrawing employer and calculate that liability using "reasonable" actuarial assumptions and methods. From this, plaintiffs urge that courts should draw the inference that multiple-employer plans, in contrast to multiemployer plans, may not impose withdrawal liability on withdrawing employers.

This inference is neither invited nor warranted. Sections 1363 and 1364 provide for liability to the Pension Benefit Guaranty Corporation in narrow circumstances.[9] And it is far from clear that the MPPAA's authorization of the imposition and calculation of withdrawal liability for multiemployer plans precludes a multiple-employer plan from contracting for the imposition and calculation of withdrawal liability as a plan term. Indeed, plaintiffs correctly conceded at oral argument that there was no legislative history indicating that Congress's authorization of withdrawal liability in multiemployer plans affected multiple-employer plans' ability to contract for withdrawal liability. Statutory provisions authorizing withdrawal liability to the Pension Benefit Guaranty Corporation or a multiemployer plan do not invite or compel a federal court to create a federal common law cause of action for plaintiffs to challenge the Plan's imposition and calculation of withdrawal liability.

---

[9] Section 1363(b) provides in relevant part that "any one or more contributing sponsors who withdraw, during a plan year for which they constitute a substantial employer, from a single-employer plan which has two or more contributing sponsors at least two of whom are not under common control, shall, upon notification of such contributing sponsors by the corporation as provided by subsection (a), be liable, together with the members of their controlled groups, to the corporation in accordance with the provisions of section 1362 of this title and this section." The "'corporation', except where context clearly requires otherwise, means the Pension Benefit Guaranty Corporation." 29 U.S.C. § 1301(a)(4).

As noted, the Sixth Circuit considered and rejected an argument that a federal common law cause of action should be implied to permit employers in multiple-employer plans to challenge a Plan's terms in the same manner as employers in multiemployer plans. *Girl Scouts of Middle Tenn., Inc.*, 770 F.3d at 424–25. In doing so, the Sixth Circuit declined to create a federal common law cause of action because doing so (i) would effectively rewrite ERISA's civil enforcement provisions to include "employer in a multiple-employer plan as a party with standing to enforce the provisions of ERISA" and (ii) would alter "ERISA policies that clearly aim to protect the rights of participants, beneficiaries, [ ] fiduciaries, and employers under a multiemployer plan." *Id.* at 425 (internal quotation marks omitted).

Plaintiffs' argument here raises similar problems; to permit plaintiffs to bring a federal common law cause of action would impermissibly amend ERISA's civil enforcement provisions and treat plaintiffs as if plaintiffs were employers in a multiemployer plan. In sum, ERISA's silence on multiple-employer plans' imposition and calculation of withdrawal liability is not a persuasive reason to create a federal common law cause of action for plaintiffs.

Plaintiffs also argue that several federal appellate courts have created common law causes of actions for employers. Plaintiffs chiefly rely on *Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters & Employers Pension Fund*, 847 F.2d 113 (3d Cir. 1988), which plaintiffs contend recognizes employers' standing to challenge inequitable impositions of withdrawal liability. Plaintiffs' Memorandum in Opposition at 10–11 (citing *Carl Colteryahn Dairy, Inc.*, 847 F.2d at 121–22). Yet, as defendants correctly point out, and as plaintiffs admit in their memorandum, *Carl Colteryahn Dairy, Inc.* involved a suit brought by an employer in a multiemployer plan, a party permitted to sue "by the very terms of the statute." 847 F.2d at 120. Thus, *Carl Colteryahn Dairy, Inc.* is inapposite because the Third Circuit addressed whether a

13

party permitted to sue under ERISA may bring equitable causes of action, not whether a federal common law cause of action should be implied for a party precluded from suing under ERISA.[10]

At oral argument, plaintiffs asserted that a federal common law cause of action should be implied here because an entity not authorized to sue under ERISA's civil enforcement provisions was permitted to bring a federal common law cause of action in *Provident Life & Accident Insurance Co. v. Waller*, 906 F.2d 985 (4th Cir. 1990). This argument misunderstands *Waller*. In *Waller*, a plan administrator sought to recover money advanced to an insured for the insured's injuries caused by a car accident with an at-fault third party after the insured recovered damages from the third party. *Id.* at 986–87. When the insured refused to repay the money advanced, the plan administrator brought an ERISA action to enforce the plan's "Acts of Third Parties" clause, which provided for the repayment of money advanced in the event an insured's recovery of damages from the third party. *Id.* The Fourth Circuit held that a plan administrator was not a participant or beneficiary authorized to sue under § 1132(a)(1)(B). But the Fourth Circuit noted that "[i]t is probable . . . [the administrator] could have sued under § 1132(a)(3)" as a fiduciary. *Id.* at 988 n. 5. Importantly, in permitting the plan administrator to bring a bring common law claim for unjust enrichment, the Fourth Circuit emphasized that the creation of a federal common law cause of action for unjust enrichment "would *further* the contract between the parties and effectuate the clear intent of Provident's 'Acts of Third Parties' Clause.'" *Id.* at 993 (emphasis in original).

---

[10] Moreover, the other cases cited by plaintiffs are similarly inapposite. *Plucinski v. I.A.M. Nat'l Pension Fund*, 875 F.2d 1052, 1057 (3d Cir. 1989) (creating an equitable cause of action for employer in multiemployer plan for the recovery of contributions erroneously paid to pension funds); *Chase v. Trustees of W. Conference of Teamsters Pension Tr. Fund*, 753 F.2d 744, 749 (9th Cir. 1985) (applying "general equitable principles applied to claims by employers" in multiemployer plans to suit for contribution refund); *Teamsters Local 639 Emp. Health Tr. v. Cassidy Trucking, Inc.*, 646 F.2d 865, 868 (4th Cir. 1981) (permitting employer in an employee welfare benefit plan to sue for reimbursement for mistakenly paid contributions).

Here, the creation of a federal common law cause of action would disregard *Waller*'s requirement that a federal common law remedy "*further* the contract between the parties." *Id.*; *Provident Life & Acc. Ins. Co. v. Cohen*, 423 F.3d 413, 426 (4th Cir. 2005) (noting *Waller*'s emphasis on whether the federal common law cause of action sought would further the parties' contract) (citing *Waller*, 906 F.2d at 993). In sum, the creation of a federal common law cause of action to permit plaintiffs to challenge withdrawal liability would disregard and indeed conflict with, rather than further, the Plan's terms, which explicitly provide for the imposition of withdrawal liability. Thus, *Waller* is consistent with the Fourth Circuit's direction not to create federal common law remedies that "threaten to override the explicit terms of an established ERISA benefit plan." *Compare Waller*, 906 F.2d at 993, *with Singer*, 964 F.2d at 1452.[11]

In sum, none of plaintiffs' arguments for the creation of a federal common law cause of action is persuasive. Plaintiffs' Complaint must therefore be dismissed for failure to state a claim because its state-law claims are preempted and the creation of a federal common law cause of action would conflict with ERISA's civil enforcement provisions and the Plan's terms. Because plaintiffs' state-law claims cannot be brought as federal claims, plaintiffs' Complaint must be dismissed with prejudice.

### III.

Defendants' motion to dismiss only Count II pursuant to Rule 12(b)(1), Fed. R. Civ. P., on the ground that plaintiffs lack standing does not require extensive analysis. Count II of plaintiffs'

---

[11] Moreover, subsequent Fourth Circuit jurisprudence makes clear that "the justification for the court's recognition of a federal common law unjust enrichment claim in *Waller* is in serious doubt, as it is no longer debatable that [a plan administrator] has an 'explicit remedy' under § 1132(a)(3)" because a plan administrator is a fiduciary. 423 F.3d at 423–24 (citing *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 379 (4th Cir. 2001)). Thus, *Waller*'s dubious creation of federal common law is hardly a persuasive justification for the creation of a federal common law remedy for plaintiffs.

Complaint challenges the use of an unlawfully low interest rate in any future calculation of withdrawal liability, not solely a 2.6% interest rate as plaintiffs contend. Count II satisfies Article III's injury-in-fact requirement because an injury resulting from defendants' calculation of withdrawal liability is "certainly impending." *Retail Industry Leaders Ass'n v. Fielder*, 475 F.3d 180, 186 (4th Cir. 2007) (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160 (4th Cir. 2000)). And a favorable decision declaring defendants' calculation of withdrawal liability unlawful would redress plaintiffs' injury. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). Ultimately, it is not necessary to reach or decide whether defendants properly calculated withdrawal liability pursuant to the Plan's terms to dispose of this Complaint because plaintiffs' claims challenging the imposition and calculation of withdrawal liability are preempted and no federal common law cause of action exists or should be implied.

### IV.

Plaintiffs' state-law claims challenging the Plan's imposition and calculation of withdrawal liability are preempted, and plaintiffs did not and cannot plead federal common law causes of action in place of the preempted state-law claims. As such, plaintiffs' Complaint fails to state a claim on which relief can be granted, and defendants' motion to dismiss pursuant to Rule 12(b)(6) must be granted. Because amendment would be futile, plaintiffs' Complaint must be dismissed with prejudice.

An appropriate Order will issue. The Clerk is directed to provide a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
February 7, 2020

T. S. Ellis, III
United States District Judge